[L. A. No. 26374. In Bank. Aug. 28, 1961.]

EDMUND F. BROVELLI et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents; STANLEY MOSK, as Attorney General, Real Party in Interest.

William T. Selby and Glenn C. Garman for Petitioners.

No appearance for Respondents.

Stanley Mosk, Attorney General, William C. Dixon, Assistant Attorney General, Miles J. Rubin, Vincent W. Thorpe, George J. Roth and Otto J. Hetzel, Deputy Attorneys General, for Real Party in Interest.

GIBSON, C. J.—By this proceeding in certiorari petitioners, a California corporation named Rocklite Products and four of its officers, seek to annul an order adjudging them guilty of contempt.

In connection with an investigation commenced by the attorney general to determine whether the Cartwright Act or the Unfair Practices Act was being violated by the concrete block industry, Deputy Attorney General Rubin, on Decem-

ber 14, 1960, issued a subpena duces tecum directed to Rocklite, a manufacturer and distributor of concrete blocks. The subpena called for the production of specified documents covering a period from September 1, 1959, to December 14, 1960. Rocklite did not comply with the subpena, and on December 20 a court order was entered directing it to show cause why it should not produce the described documents. The corporation did not respond to this order, and on January 4, 1961, a court order was entered directing it to appear before the attorney general and produce the documents. Upon Rocklite's failure to comply with the order of January 4, a contempt proceeding was initiated against the corporation, its president, Edmund F. Brovelli, its two vice presidents, Donald O. McCall and E. A. Peterson, and its secretary-treasurer, John R. Anderson. The court determined that Rocklite and the officers were guilty of contempt for refusing to obey the order of January 4, fined the corporation $500, and ordered that each of the officers be committed to the county jail until the corporation produced the documents.

Section 11180 of the Government Code authorizes the head of each department to make investigations and prosecute actions concerning "All matters relating to . . . subjects under the jurisdiction of the department," and subdivision (e) of section 11181 provides that in connection with such investigations and actions he may issue "subpenas for the attendance of witnesses and the production of papers, books, accounts, documents and testimony in any inquiry, investigation, hearing or proceeding pertinent or material thereto in any part of the State." Under section 11187 the head of a department in the event of noncompliance with "such subpena," may petition "the superior court in the county in which the hearing is pending for an order compelling the person to attend and testify or produce the papers required by the subpena before the officer named in the subpena." Section 11188 provides that, upon the filing of such a petition, the court shall enter an order to show cause why there has not been compliance and that, if it appears to the court that the subpena was regularly issued, the court shall enter an order directing that "the person appear before the officer named in the subpena at the time and place fixed in the order and testify or produce the required papers." It is further provided in section 11188 that upon failure to obey the order "the person shall be dealt with as for contempt of court."

The subject of investigation here was one which fell

within the jurisdiction of the attorney general. (Bus. & Prof. Code, §§ 16752, 16753, 16754; Civ. Code, §§ 3369, subd. 5, 3370; Corp. Code, § 4690.) As head of the Department of Justice, therefore, he could investigate the subject in view of the authority conferred by section 11180 of the Government Code, and he was entitled to subpena Rocklite in that connection under section 11181.[1]

A formal administrative hearing need not be pending before a subpena issued by the head of a department can be judicially enforced under sections 11187 and 11188. Section 11181 permits issuance of a subpena for purposes of an "investigation," an "inquiry," or a "proceeding," as well as a "hearing," and in providing for judicial enforcement sections 11187 and 11188 refer generally to "such subpena" and "the subpena," without distinction or qualification.

While under section 11187 the petition for judicial enforcement is to be filed in the court of the county in which "the hearing is pending," the only reasonable conclusion is that the word "hearing" is used in a broad sense to refer to all the circumstances in which a subpena may be issued under section 11181. Moreover, restricting judicial enforcement to a situation where a formal hearing is pending would be contrary to the over-all statutory purpose of assuring effective administration by the various departments. Such administration, of course, frequently depends upon investigations which do not culminate in a formal hearing, and those investigations would be significantly impeded without the aid of the compulsory process provided for.

We do not agree that, since possible violations of the Cartwright and Unfair Practices Acts are in issue, certain sections of those acts cited by petitioners (Bus. & Prof. Code, §§ 16758, 17083, 17084, 17086) have the effect of rendering the Government Code provisions under consideration inapplicable. While the cited sections relate to the discovery of evidence, they concern only discovery during the pendency of an action brought under the acts; they do not deal with the power of the attorney general to compel production of evidence in connection with an investigation where no action

---

[1] A subpena may be directed to a corporation without naming any particular officer, and the command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. (*Wilson* v. *United States*, 221 U.S. 361, 374, 376 [31 S.Ct. 538, 55 L.Ed. 771]; see *McLain* v. *Superior Court*, 99 Cal.App.2d 109, 114-115 [221 P.2d 300]; *cf. Drew* v. *Superior Court*, 180 Cal. 711, 712-713 [182 P. 417].)

is pending. They are not inconsistent with the provisions of the Government Code giving the attorney general that power, and it is unreasonable to assume that the Legislature intended to deny him the use of the Government Code provisions in this important area of law enforcement.

There is no constitutional objection to a system under which the heads of departments of government may compel the production of evidence for purposes of investigation, without instituting formal proceedings against the one from whom the evidence is sought or filing any charges against him.

As has been said by the United States Supreme Court, the power to make administrative inquiry is not derived from a judicial function but is more analogous to the power of a grand jury, which does not depend on a case or controversy in order to get evidence but can investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." (*United States* v. *Morton Salt Co.*, 338 U.S. 632, 642-643 [70 S.Ct. 357, 94 L.Ed. 401].)

Of course, department heads cannot compel the production of evidence in disregard of the privilege against self-incrimination or the constitutional provisions prohibiting unreasonable searches and seizures. It should be pointed out, however, in this connection that where, as here, the records of a corporation are the object of a subpena, the situation differs from one where the private papers of an individual are sought. Neither the corporation nor a person having custody of its records can refuse to produce them on the basis of the privilege against self-incrimination. (*Wilson* v. *United States*, 221 U.S. 361, 377 et seq. [31 S.Ct. 538, 55 L.Ed. 771]; see *Curcio* v. *United States*, 354 U.S. 118, 122 [77 S.Ct. 1145, 1 L.Ed.2d 1225].) Insofar as the prohibition against unreasonable searches and seizures can be said to apply at all it requires only that the inquiry be one which the agency demanding production is authorized to make, that the demand be not too indefinite, and that the information sought be reasonably relevant. (*United States* v. *Morton Salt Co., supra,* 338 U.S. 632, 651-654; *Oklahoma Press Pub. Co.* v. *Walling,* 327 U.S. 186, 202 et seq. [66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531].)

A number of points are urged by petitioners by way of attacking the particular subpena and court orders involved in this case. One of the problems presented arises out of the fact that the Government Code provisions under consideration, with the exception of stating who is authorized to serve

subpenas issued by department heads (§ 11184), do not set forth the manner in which such subpenas and the court orders made in connection with them are to be served. Petitioners contend that valid service upon Rocklite was not accomplished.

The Code of Civil Procedure contains several provisions as to how service of *summons* is to be made upon a corporation, and, in the absence of any statute to the contrary, it is reasonable to conclude that the process provided for in the Government Code is governed by the summons provisions of the Code of Civil Procedure insofar as appropriate. Section 411 of that code provides in subdivision 1 that service of summons must be made on a domestic corporation by delivering a copy to "the president or other head of the corporation, a vice president, a secretary, an assistant secretary, general manager, or a person designated for service of process or authorized to receive service of process." Section 410 provides in part that when service is against a corporation there "shall" appear on the copy of the summons a notice to "the person served" that he is being served "on behalf" of the corporation as a person upon whom service must be made in order to effect service on the corporation under the provisions of section 411. It is further provided in section 410 that, if this notice does not appear on the summons, no default may be taken against the corporation.[2]

There is evidence that the general manager of Rocklite, which had offices in Napa, La Puente and Ventura, was petitioner Peterson. Service upon Rocklite was not attempted through Peterson or any officer of the corporation. The subpena and the court order of December 20, 1960, to show cause why Rocklite should not comply were served by handing copies to Mike Fitzpatrick, who was sales manager of the corporation, and the court order of January 4, 1961, directing Rocklite to produce the documents described in the subpena

---

[2] The relevant portions of section 410 read: "When the service is against a corporation, . . . there shall appear on the copy of the summons that is served a notice stating in substance: 'To the person served: You are hereby served in the within action (or proceeding) on behalf of (here state the name of the corporation . . .) as a person upon whom the summons and a copy of the complaint must be served to effect service against said party under the provisions of (here state appropriate provisions of Section . . . 411) of this code.' . . . the certificate or affidavit of service must recite that such notice appeared on such copy of the summons, if, in fact, it did appear. When service is against a corporation, . . . and notice of that fact does not appear on the copy of the summons or a recital of such notification does not appear on the certificate or affidavit of service of process as required by this section, no default may be taken against such corporation. . . ."

was served by leaving a copy with Charles Mullins, office manager of the La Puente office. A notice of the type set forth in section 410 to the effect that the person served was being served on behalf of Rocklite under the provisions of section 411 did not appear on the subpena or on either of the court orders.

In the Government Code procedure, orders to show cause such as the one of December 20 constitute the step by which a court undertakes to obtain jurisdiction of the person to whom a subpena is directed, and they are thus akin to a summons and must be served in accordance with the summons provisions of the Code of Civil Procedure, including the notice requirement of section 410. Nor is there any sound reason why the subpena in the first instance should not be served in conformity with those provisions. Orders such as the one of January 4, representing a judicial determination that there must be compliance with the subpena, are not, of course, like a summons but like other adjudications of a court, and, if the person subpenaed has previously been brought within the court's jurisdiction by proper service of the order to show cause and has knowledge of the decision against him, he is bound by the adjudicating order, whether his knowledge was acquired through service satisfying the summons provisions or in some different way. However, under the circumstances before us, it is clear that the order of January 4 was entered by the court without having obtained jurisdiction and amounted to a default judgment prohibited by section 410. Accordingly, the order was invalid and could not give rise to a contempt judgment against petitioners.

This conclusion makes it unnecessary to consider the other questions raised; for example, whether the term ''general manager,'' as used in the provision of section 411 designating the persons through whom service upon a domestic corporation must be made, is broad enough to include persons holding positions such as those held by Fitzpatrick and Mullins.

The order adjudging petitioners guilty of contempt is annulled.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.