[Civ. No. 29310. First Dist., Div. One. Jan. 25, 1972.]

JERRY W. FIELDER, as Director, etc., Plaintiff and Appellant, v. BERKELEY PROPERTIES COMPANY et al., Defendants and Appellants.

**34**

## COUNSEL

Evelle J. Younger, Attorney General, and Roderick Walston, Deputy Attorney General, for Plaintiff and Appellant.

Fred F. Cooper for Defendants and Appellants.

## OPINION

**MOLINARI, P. J.**—Banos Land, Inc. and Berkeley Land Company, Inc. (hereinafter the corporations), Berkeley Properties Company (hereinafter the partnership), and A. M. Sabatte and May Sabatte (hereinafter the individuals), collectively referred to as appellants, appeal from a judgment granting the petition of the Director of Agriculture (hereinafter the Director) for an order compelling obedience to an administrative subpoena. The Director appeals from that portion of the judgment deter-

mining that the partnership is entitled to assert the privilege against self-incrimination.

The Director served a subpoena duces tecum on appellants in connection with an investigation by the Director of a possible conspiracy between appellants and Berkeley Farms, a licensed milk distributor, to violate sections 62042 and 62641 of the Agricultural Code prohibiting the payment of secret rebates by milk distributors to their wholesale customers. When appellants refused to respond to the subpoenas the Director filed a petition, pursuant to Government Code section 11187,[1] for an order compelling them to attend and testify and to produce the papers required by the subpoenas before the person named therein.

The petition, after designating the identities of appellants, alleged essentially that on February 27, 1970, the Director served on each of appellants, as the respondents named therein, a subpoena duces tecum pursuant to sections 61931 et seq. and 61471 et seq. of the Agricultural Code, in conjunction with section 11180 et seq. of the Government Code, compelling them to appear and testify at an investigational hearing conducted by the Director, for the purpose of determining whether appellants had committed, in conjunction with Berkeley Farms, any violations of the provisions of the Agricultural Code of secret rebates to wholesale customers for the purpose of securing and maintaining the accounts of said customers. Copies of said subpoenas and the declarations in support thereof were attached to the petition as exhibits. The petition also alleged that appellants failed to appear on the day set for said investigational hearings and that they had advised the Director that they would refuse to obey the terms of said subpoena duces tecum. Also attached to the petition, as an exhibit, was the declaration of Chester D. Schiveley.[2]

Upon the filing of the petition the superior court entered its order directing appellants to appear before the court at a specified time and

---

[1]Government Code section 11187 provides: "If any witness refuses to attend or testify or produce any papers required by such subpena the head of the department may petition the superior court in the county in which the hearing is pending for an order compelling the person to attend and testify or produce the papers required by the subpena before the officer named in the subpena.

"The petition shall set forth that:

"(a) Due notice of the time and place of attendance of the person or the production of the papers has been given.

"(b) The person has been subpenaed in the manner prescribed in this article.

"(c) He has failed and refused to attend or produce the papers required by subpena before the officer in the cause or proceeding named in the subpena, or has refused to answer questions propounded to him in the course of the investigation or hearing."

[2]Schiveley was designated therein as a "Regional Administrator of the Bureau of Milk Marketing Enforcement of the California Department of Agriculture."

place to show cause why they should not be ordered to appear before the Director or his duly authorized representative to testify and produce all books and records required by the subpoenas duces tecum attached to the petition. Appellants did not file a responsive pleading to said petition but on the date set in the order to show cause appeared by and through their attorney. Appellants' counsel objected to proceeding on affidavits. He also indicated that his clients intended to exercise their rights against self-incrimination and unreasonable search and seizure. He stated further that if the matter proceeded on affidavits he would object to their sufficiency, and to the manner in which the subpoenas were served. Following a colloquy between court and counsel it was agreed that the matter would be submitted on briefs.

Thereafter, appellants, prior to the filing of their points and authorities, filed a pleading entitled "Response to Petitioner, Request For Hearing, and Motion to Quash." In said response appellants admitted all of the allegations of the petition excepting the allegation as to the purpose for which the subpoenas were issued. The response objected to the consideration of Schiveley's declaration on the basis that it contained hearsay, opinion and conclusions and that it was not served at the time the subpoenas were served.[3] Objection was also made in the response that the subpoenas were issued to firms and corporations, rather than witnesses; that the subpoenas asked for documents and records not referred to in the affidavits; that the subpoenas were indefinite; and that the affidavits in support of the issuance of the subpoenas were deficient in that they contained hearsay and conclusions of fact and were indefinite and vague. The response also asserted objections on constitutional grounds predicated upon the claim that the petition, the subpoenas and the affidavits in support of their issuance violated appellants' rights against self-incrimination and unreasonable search and seizure, and on the basis that appellants were deprived of due process because no hearing is provided by the statutes whereby the allegations of the affidavits can be challenged and no provision is made for the quashing of said subpoenas. Accordingly, appellants prayed that the petition be denied or dismissed, and, in the alternative, that the subpoenas be quashed on the basis that they violated appellants' constitutional rights. In said prayer, appellants requested that they be given a full hearing on the allegations set forth in the affidavits issued in support of the subpoenas on the ground that they would be deprived of due process if the court accepted such allegations at face value without a hearing.

The court, thereafter, upon the receipt of points and authorities from

---

[3]At the previous hearing counsel for the Director conceded that Schiveley's declaration could not be considered in support of the subpoenas.

both the Director and appellants, entered its judgment directing appellants to appear and testify in accordance with the subpoenas duces tecum at an investigational hearing convened by the Director and, at such hearing, to produce the records and books referred to in the subpoenas. Said judgment also provided that the corporations shall not refuse to answer any questions or produce any book or record on the ground that said answer, or said book or record, will tend to incriminate said corporations. The judgment provides, further, that the partnership and the individuals shall not be required, at said investigational hearing, to answer any question, or produce any book or record, which tends to incriminate said partnership or the individuals.

Appellants contend that the affidavits supporting the subpoenas duces tecum do not properly describe the documents subpoenaed and the custodians thereof; that the subpoenas do not properly describe the documents subpoenaed and the person subpoenaed; that the subpoenas were improperly served on the partnership and the corporations because they were served on John Sabatte whose relationship to the corporations is not shown, and he is not shown to have custody of any of the records of the partnership; that appellants were entitled to a hearing in the nature of a motion to quash and that they were improperly denied such a hearing; and that the judgment is improper because it orders the corporations and the partnership to appear and testify, rather than ordering a witness to appear and testify.

The Director contends, on his appeal, that the trial court erred in holding that the partnership is entitled to assert the privilege against self-incrimination in these proceedings.

Adverting to the authority of the Director to investigate suspected violations of the Agricultural Code, we first take cognizance of certain pertinent statutes. Government Code section 11180 provides that "The head of each department may make investigations and prosecute actions concerning: (a) All matters relating to the business activities and subjects under the jurisdiction of the department. (b) Violations of any law or rule or order of the department. (c) Such other matters as may be provided by law." In connection with such investigations and actions the Director may inspect books and records and issue subpoenas for the attendance of witnesses and the production of papers, books, accounts, documents and testimony in any inquiry, investigation, hearing or proceeding pertinent or material thereto. (Gov. Code, § 11181, subds. (a) and (e).)

The superior court has jurisdiction to compel the attendance of witnesses, the giving of testimony and the production of the papers, books, accounts and documents required by the subpoenas (Gov. Code, § 11186), and

such attendance may be compelled by an order of the court based upon an order to show cause upon the filing of a petition by the Director for an order compelling such attendance. (Gov. Code, §§ 11187, 11188.) The matters required to be stated in the petition are set forth in section 11187.[4] Section 11188 provides as follows: "Upon the filing of the petition the court shall enter an order directing the person to appear before the court at a specified time and place and then and there show cause why he has not attended or testified or produced the papers as required. A copy of the order shall be served upon him. If it appears to the court that the subpoena was regularly issued by the head of the department, the court shall enter an order that the person appear before the officer named in the subpoena at the time and place fixed in the order and testify or produce the required papers. Upon failure to obey the order, the person shall be dealt with as for contempt of court."

The subpoenas issuable by the Director are for purely investigative purposes and it is not necessary that a trial or hearing be pending. (*Brovelli* v. *Superior Court,* 56 Cal.2d 524, 528 [15 Cal.Rptr. 630, 364 P.2d 462].) Moreover, since the proceedings pursuant to the Government Code (§§ 11180-11191) do not relate to judicial proceedings but to statutorily permitted investigations, the proceedings under the Government Code are not constitutionally invalid because they fail to follow Code of Civil Procedure sections 1985 and 2035 which apply to proceedings of a judicial nature. (*People* v. *West Coast Shows, Inc.,* 10 Cal.App.3d 462, 470 [89 Cal.Rptr. 290].) ■ As observed in *Brovelli,* "There is no constitutional objection to a system under which the heads of departments of government may compel the production of evidence for purposes of investigation without instituting formal proceedings against the one from whom the evidence is sought or filing any charges against him. As has been said by the United States Supreme Court, the power to make administrative inquiry is not derived from a judicial function but is more analogous to the power of a grand jury, which does not depend on a case or controversy in order to get evidence but can investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.' (*United States* v. *Morton Salt Co.,* 338 U.S. 632, 642-643. . . .) Of course, department heads cannot compel the production of evidence in disregard of the privilege against self-incrimination or the constitutional provisions prohibiting unreasonable searches and seizures . . . . Insofar as the prohibition against unreasonable searches and seizures can be said to apply at all it requires only that the inquiry be one which the agency demanding production is authorized to make, that the demand be not too indefinite, and that the information sought be reasonably relevant. (*United States* v. *Morton Salt Co., supra,*

---

[4]This section is set out in toto in footnote 1, *supra.*

338 U.S. 632, 651-654 [94 L.Ed. 401, 415-417, 70 S.Ct. 357]; *Oklahoma Press Pub. Co.* v. *Walling,* 327 U.S. 186, 202 et seq. . . .)" (56 Cal.2d at p. 529.)

In *West Coast Shows* we pointed out that the requirement of *Brovelli* "that the information sought be 'reasonably relevant' " means reasonably relevant to the intended investigation, not to any judicial hearing. (10 Cal. App.3d at p. 470.) We also observed that "If a person affected by the Government Code process shall believe that *Brovelli's* requirements are not met, without contempt or other penalty he need not respond. Thereupon the investigating agency is obliged, on an order to show cause, to arrange a superior court hearing at which conformity of the subpoena duces tecum to constitutional and legal standards may be judicially tested. (§§ 11187, 11188; . . .) Thus, the Government Code provides an opportunity for adjudication of all claimed constitutional and legal rights before one is required to obey the command of a subpoena duces tecum issued for investigative purposes. This is an equivalent, if not greater, measure of constitutional protection to that afforded in judicial proceedings under Code of Civil Procedure sections 1985 and 2036." (At p. 470.)

█ In the light of the applicable statutes and the interpretations of *Brovelli* and *West Coast Shows,* we apprehend that upon the issuance of the order to show cause for failure to respond to the subpoena duces tecum pursuant to Government Code section 11188 the hearing thereon is confined to determining whether the subpoena conforms to legal and constitutional standards. With respect to the legal standards the inquiry, in the language of section 11188, is whether the subpoena "was regularly issued by the head of the department." As provided in section 11188 "If it appears to the court that the subpoena was regularly issued by the head of the department, the court *shall* enter an order that the person appear before the officer named in the subpoena at the time and place fixed in the order and testify or produce the required papers." (Italics added.) The term "regularly issued" means in accordance with the provisions of sections 11180, 11181, 11182, 11184 and 11185 of the Government Code providing for the matters which may be investigated, the acts authorized in connection with investigations, and the service of process.

█ With respect to constitutional standards, we first consider the privilege against self-incrimination. Although it is true that department heads cannot compel the production of evidence in disregard of the privilege against self-incrimination, this objection may not be urged at the order to show cause hearing pursuant to section 11188. Such privilege cannot be urged by the witness until a question is put to him after being sworn, the answer to which would have the tendency to incriminate him. (*Ex parte Stice,* 70 Cal. 51, 53 [11 P. 459]; *Overend* v. *Superior Court,* 131 Cal. 280,

283 [63 P. 372]; *People* v. *Bernal,* 254 Cal.App.2d 283, 287 [62 Cal. Rptr. 96].) Accordingly, the question of privilege does not arise until he refuses to answer a specific question. (*Ex parte Stice, supra; People* v. *Bernal, supra.*) In this regard we observe that if the witness refuses to testify before the officer named in the subpoena on the ground of self-incrimination he does not thereby constitute himself the arbitrary or exclusive judge as to whether or not the evidence called for by the question would tend to incriminate him. This is a matter for the court to decide and section 11186 gives the superior court in the county in which the hearing before the departmental head is held the jurisdiction to determine whether the question tends to incriminate the witness. (See *Ex parte Stice, supra; Overend* v. *Superior Court, supra.*) Accordingly, if a witness exercises the privilege against self-incrimination at the hearing held under the direction of the Director, the propriety of the question in this respect is subject to the determination of the superior court under appropriate proceedings.

■ With respect to the prohibition against unreasonable searches and seizures the scope of the inquiry on the order to show cause is limited to ascertaining that the demand of the subpoena is not too indefinite and that the information sought be reasonably relevant to the intended investigation. (*Brovelli* v. *Superior Court, supra,* 56 Cal.2d 524, 529; *People* v. *West Coast Shows, Inc., supra,* 10 Cal.App.3d 462, 470.)

■ Adverting to appellants' contentions we first consider the contention that they were entitled to a hearing in the nature of a motion to quash and that they were improperly denied such a hearing. This contention is without merit. Appellants were granted a hearing on the order to show cause and they were permitted to show that the subpoenas were not regularly issued and they were permitted to present and argue the application of the privilege against self-incrimination and the constitutional provisions prohibiting unreasonable searches and seizures. In sum, they were permitted, at a hearing, to show cause to the extent specified in section 11188 why they had not attended or testified or produced the papers required by the subpoenas. We perceive appellants' complaint to be that they were not permitted a hearing whereby they could dispute and contradict the factual matters contained in the declarations supportive of the subpoenas. Such a hearing is not within the contemplation of the subject administrative inquiry and investigation.

Appellants next contend that the affidavits in support of the subpoenas do not properly describe the documents subpoenaed and the custodian thereof. ■ In considering this contention we first observe that a "good cause" showing affidavit is not required as a basis for the subpoenas for statutorily permitted investigations. (*People* v. *West Coast Shows, Inc.,*

*supra,* 10 Cal.App.3d 462, 468-470.) Accordingly, it is not necessary to show the relevancy and materiality of the matter sought to be produced. (*People* v. *West Coast Shows, Inc., supra.*) In the instant case the Director chose to support the issuance of the subpoenas by the use of declarations. These declarations amply stated the investigatory basis for the issuance of the subpoenas.[5] Such declarations or affidavits are not, however, required by the subject statutes as a basis for the issuance of subpoenas incident to the subject statutorily permitted investigations. We need not discuss, therefore, the failure of the declarations to describe the subpoenaed documents.[6]

■ We next turn to the contention that the subpoenas did not properly describe the documents subpoenaed and the persons subpoenaed. The subject subpoenas were directed, respectively, to the corporations, the partnership, and to the individuals, A. M. Sabatte and Mary Sabette. The subpoena served on the partnership indicated that it was a partnership consisting of Frank E. Sabatte, George Sabatte, Remond Sabatte, Albert Sabatte and John Sabatte. The certification of service endorsed on the subpoenas directed to the corporations, the partnership and Mary Sabatte indicated that service of the same was made by the delivery of a true copy thereof personally to John Sabatte. In the case of A. M. Sabatte the certificate indicated that personal service was made upon him.

The subpoenas directed to the corporations required them to produce the following named books and documents for the calendar year 1969 under their custody or control: "[T]he general ledger, general journal, income and disbursements records of whatever nature . . . including can-

---

[5]The respective declarations stated that examination of the Berkeley Farms' accounts disclosed the existence of a definite and consistent pattern involving the transfer of funds from Berkeley Farms' accounts to the accounts of appellants; that there was cause to believe that Berkeley Farms was using appellants as agents or conduits to make money loans, payments, allowances, and other prohibited practices with wholesale customers; that Berkeley Farms' records revealed that funds had been commingled with funds revealed in the records as being attributable to appellants' accounts; that the amounts of the funds described in the records as being transferred to appellants' accounts were unsubstantiated by any source documents provided by Berkeley Farms and were inconsistent with the amounts of said funds based upon representations made by Berkeley Farms' representatives; that the charged accounts were also inconsistent with representations made by Berkeley Farms' representatives as to the nature of the expenditures; and that, therefore, review of the accounts and records of appellants was necessary for the Director to adequately complete his investigation into possible violations of the various sections of the Agricultural Code. (§§ 62042, 62043, 62044, 62045, 62046, 62488, 62489, 62490.)

[6]We do take cognizance that each of the declarations did designate the custodian of the papers sought to be produced; that in the case of the corporations and the partnership the records sought to be produced were identified as "ledgers, journals, and supporting documents for the calendar year ended December 31, 1969"; and that in the case of the individuals such papers were referred to as "income and expense records" and "income and disbursement records," respectively, "for the calendar year ended December 31, 1969."

celled checks and source documents of whatever nature, including records of officers, employees, representatives or other agents, which records reflect or relate to any payments made to, or on behalf of, any wholesale customer engaged in the business of purchasing dairy products, or to any payments made to or from or on behalf of Berkeley Farms." The subpoena directed to the partnership contained the same language, differing in only one respect, i.e., the word "partners" was substituted in place of the word "officers." With respect to the individuals the subpoenas called for the production of "the income and disbursements records of whatever nature" for the calendar year 1969 in their custody or control "including cancelled checks and source documents of whatever nature which records reflect or relate to any payments made to, or on behalf of, any wholesale customer engaged in the business of purchasing dairy products, or to any payments made to or from or on behalf of Berkeley Farms."

The subject subpoenas clearly describe the persons subpoenaed. Appellants' argument that the subpoenas must be directed to individuals and not to inanimate entities such as corporations and partnerships is not meritorious. We observe that in *Brovelli* the subpoena was issued to a corporation, and not to its individual officers. In that case the reviewing court noted that "A subpoena may be directed to a corporation without naming any particular officer, and the command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. [Citations.]" (56 Cal.2d 524, 528, fn. 1.) The same principle would be applicable upon analogy to a subpoena issued to a partnership. We observe, moreover, that in the present case, although the subpoena was directed to the partnership, it also stated that the partnership consisted of certain named individuals. This rationale is equally dispositive of appellants' contention that the judgment is improper because it orders the corporations and the partnership to appear and testify rather than ordering a witness to appear and testify.

█ The instant subpoenas also clearly and specifically identify the books and documents sought to be produced. Only such records as were in the custody and control of appellants were required to be produced and appellants were only required to produce records reflecting or relating to payments made to or from or on behalf of Berkeley Farms. We perceive the subpoenas to be reasonably specific not only within the contemplation of the Government Code statutes but also sufficiently specific to satisfy the constitutional prohibition against unreasonable searches and seizures. The subpoenas also indicate that the information sought is reasonably relevant to the intended investigation. In this connection we observe that although the declarations may not have been required under

the statute for the issuance of the subpoenas, they were of significance in satisfying the constitutional standard that the "information sought be reasonably relevant." Such relevancy to the intended investigation clearly appears from the matters declared in the respective declarations.

■ Adverting to appellants' objection that the subpoenas were not properly served on the corporations and the partnership because the relationship of the person served to such entities is not shown on the subpoenas, we first observe that the affidavit of service attached to the subpoena served on the partnership shows that it was served on John Sabatte and that such person is designated on the subpoena as one of the partners. With respect to the corporations, the relationship of John Sabatte to the corporations does not appear on the proof of service.

In *Brovelli* it was noted that the subject Government Code provisions do not set forth the manner in which such subpoenas are to be served. (At pp. 529-530.) Accordingly, it was concluded that such subpoenas should be served in conformity with the provisions for service of summons provided for in the Code of Civil Procedure. (At p. 531.) The service of the subject subpoenas does not appear to be in conformity with the method of service provided for the service of summons in section 411 of the Code of Civil Procedure in force at the time the instant subpoenas were served.[7] With respect to the corporations, the proof of service does not indicate service upon an officer of the corporations or upon a person designated for service of process. Insofar as the partnership is concerned, service was made on only one of the partners although section 411 required service on each of the partners.

The failure to serve the subpoenas in conformity with the summons provisions of the Code of Civil Procedure does not, however, vitiate the instant proceedings against the corporations and the partnership. These entities responded to the order to show cause and attended the hearing thereon by and through their attorney. No objection was interposed urging any defect in the service of the subpoenas nor did appellants appear specially at the hearing for such purpose.

In *Brovelli*, the reviewing court, although finding that the subpoena was inadequately served, declared: ". . . if the person subpoenaed has previously been brought within the court's jurisdiction by proper service of the order to show cause and has knowledge of the decision against him, he is bound by the adjudicating order, whether his knowledge was acquired through service satisfying the summons provisions [Code Civ.

---

[7]Effective July 1, 1970, section 411 of the Code of Civil Procedure was repealed and superseded by section 416.10 et seq. of said code.

Proc., §§ 410, 411] or in some different way. . . ." (56 Cal.2d at p. 531.) In that case the court observed that both the subpoena *and* the order to show cause had been improperly served. Moreover, the subpoenaed party did not appear at the hearing on the order to show cause. Consequently, the court did not have jurisdiction over him. Here, the situation is different. The order to show cause was properly served on appellants and they appeared at the hearing on the order to show cause and participated in the hearing.

We observe, moreover, that any defect in the service of the subpoenas appears to have been waived by appellants' admission, in their response to the Director's petition for an order compelling obedience to the subpoenas, "That the facts set forth in the petition are true . . . ." The petition alleged that the Director served on each of appellants "a subpoena duces tecum, pursuant to the provisions of section 61931 et seq. and section 61471 et seq. of the Agricultural Code, in conjunction with section 11180 et seq. of the Government Code." In view of this admission appellants may not be heard to complain for the first time on appeal that the subpoenas were inadequately served.

We turn now to the Director's contention that the court erred in holding that the partnership is entitled to assert the privilege against self-incrimination. As already pointed out, such a ruling was premature because such privilege cannot be urged by the witness until a question is put to him after being sworn. In the present case the court was apparently anticipating, in view of appellants' objections at the order to show cause hearing, that the partnership entity would assert the privilege, and therefore determined in an advisory manner that the partners were entitled to claim the privilege after they were sworn.

Although the court's order was premature and should be set aside, we consider the question to be one of first impression and of sufficient public interest that it should be discussed.

It is now well established that corporations may not avail themselves of the privilege against self-incrimination. (*Brovelli* v. *Superior Court, supra,* 56 Cal.2d 524, 529; *United States* v. *White,* 322 U.S. 694, 699 [88 L.Ed. 1542, 1546, 64 S.Ct. 1248, 152 A.L.R. 1202].) Although the problem of whether the privilege applies to a partnership has not been expressly resolved by either the California or United States Supreme Court,[8] the applicable legal standards can be found in the high court's

---

[8]Decisions of lower federal courts have reached different conclusions. The following cases have held that a partner holding records to which a subpoena is directed may claim the privilege. (*United States* v. *Linen Service Council of New Jer-*

decisions dealing with the validity of the defense of the privilege when raised by those holding the documents of other types of unincorporated associations. If records of such associations are held in representative rather than personal capacities, the privilege is unavailable. (See *McPhaul* v. *United States,* 364 U.S. 372 [5 L.Ed.2d 136, 81 S.Ct. 138]; *Rogers* v. *United States,* 340 U.S. 367 [95 L.Ed. 344, 71 S.Ct. 438, 19 A.L.R.2d 378]; *United States* v. *Fleischman,* 339 U.S. 349 [94 L.Ed. 906, 70 S.Ct. 739].) In *White, supra,* the court held that an officer of an unincorporated union has no constitutional right to refuse, when ordered by subpoena duces tecum, to produce books and records of the union in his possession. (322 U.S. at p. 704 [88 L.Ed. at p. 1549].) The court observed that "The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals. [P. 698 [88 L.Ed. at p. 1546].] [¶] . . . the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity. *Boyd* v. *United States,* 116 U.S. 616. . . . [At p. 699 [88 L.Ed. at p. 1546].] [¶] The reason underlying the restriction of this constitutional privilege to natural individuals acting in their own private capacity is clear. The scope and nature of the economic activities of incorporated and unincorporated organizations and their representatives demand that the constitutional power of the federal and state governments to regulate those activities be correspondingly effective. The greater portion of evidence of wrongdoing by an organization or its representatives is usually to be found in the official records and documents of that organization. Were the cloak of the privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible. [Citations omitted.] *The framers of the constitutional guarantee against compulsory self-disclosure, who were interested primarily in protecting individual civil liberties, cannot be said to have intended the privilege to be available to protect economic or other interests of such organizations so as to nullify appropriate governmental regulations.* [At p. 700 [88 L.Ed. at p. 1547]; italics added.] [¶] . . . Basically, the power to compel the production of the records of any organization, whether it be incorporated or not, arises out of the inherent and necessary power of the federal and state governments to enforce their laws, with the *privilege against self-incrimination* being *limited to* its historic function

---

*sey* (D.N.J. 1956) 141 F.Supp. 511; *United States* v. *Lawn* (S.D.N.Y. 1953) 115 F.Supp. 674; *In re Subpoena Duces Tecum* (N.D.Cal. 1948) 81 F.Supp. 418; *United States* v. *Brasley* (W.D.Pa. 1920) 268 F. 59.) In another group of cases, the privilege was not thought to invalidate the subpoena. (*United States* v. *Wernes* (7th Cir. 1946) 157 F.2d 797; *United States* v. *Onassis* (S.D.N.Y. 1955) 133 F.Supp. 327; *United States* v. *Onassis* (D.C. 1954) 125 F.Supp. 190; *United States* v. *Silverstein* (2d Cir. 1963) 314 F.2d 789.)

of protecting only the natural individual from compulsory incrimination through his own testimony or *personal* records." (At pp. 700-701 [88 L.Ed. at p. 1547]; italics added.)

The inquiry, in each instance, as observed in *White,* is "[W]hether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interest of its constituents, but rather to embody their common or group interests only." (*United States* v. *White, supra,* 322 U.S. at p. 701 [88 L.Ed. at p. 1547].)

In the instant case, in the event that the privilege is invoked by the partners, or any of them, on behalf of the partnership, the superior court will have to decide in the light of the test delineated in *White* whether the privilege extends to the partnership.

Although the Director has not attacked the court's order that the individuals shall not be required to answer any question or produce any records at the investigational hearing which tend to incriminate, we must also point out that such an order is also premature since, as we have pointed out above, the question of privilege does not arise until a witness refuses to answer a specific question. As a statement of the constitutional privilege against self-incrimination which attaches to any individual, the order is merely reiterative of that principle and the incorporation by way of an order is not required at this stage of the proceedings.

That portion of the judgment which provides that "respondents Berkeley Properties Company, Mary Sabatte and A. M. Sabatte shall not be required, at said investigational hearing, to answer any question, or produce any book or record, which tends to incriminate the respondent to whom said question was asked, or the respondent by whom said book or record is to be produced" is reversed. In all other respects the judgment is affirmed. The Director shall recover costs from appellants.

Sims, J., and Elkington, J., concurred.