Filed 6/18/26

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| DIVISION OF OCCUPATIONAL SAFETY AND HEALTH,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant and Appellant. | B340734<br><br>(Los Angeles County<br>Super. Ct. No. 23STCP03883) |

APPEAL from an order of the Superior Court of Los Angeles County.  Thomas D. Long, Judge.  Affirmed in part, reversed in part and remanded with directions.

Littler Mendelson, Alka N. Ramchandani-Raj, Amelia A. McDermott, Edward Y.S. Tsui and S. Susie Keshishyan for Defendant and Appellant.

Danielle A. Lucido, Chief Counsel, Rocio Y. Garcia-Reyes, Assistant Chief Counsel, and Mark D. Licker, Staff Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

In June 2023, the Division of Occupational Safety and Health (OSHA), a state agency within the California Department of Industrial Relations, was notified by the Los Angeles County Medical Examiner (Coroner's Office) of the death of a man who made deliveries as a driver with Uber Technologies, Inc.'s (Uber) app-based delivery platform. After efforts to arrange a meeting with Uber about the driver fatality were unsuccessful, OSHA served an administrative subpoena on Uber under Government Code section 11181, subdivision (e), and Labor Code section 6314, subdivision (c), seeking records related to the driver's employment status and the circumstances surrounding his death. Uber responded with objections and did not produce any documents. OSHA, under Government Code section 11187, then filed this action below seeking to enforce its subpoena. The superior court granted OSHA's petition and ordered Uber to produce all of the requested documents.

Uber appeals, arguing the trial court's order enforcing OSHA's administrative subpoena is invalid on numerous grounds. We affirm the order compelling production, but reverse the order to the extent it orders production of all documents without limitation, and remand to the superior court to reconsider the scope of OSHA's requests.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The death of Dino Park

On May 26, 2023, after making a delivery as a driver for the "Uber Eats" app-based delivery platform, Dino Park fell down a flight of stairs resulting in serious injuries. Park died several days later from his injuries. OSHA was notified of Park's death on June 7, 2023 by the Coroner's Office. OSHA spoke with Park's widow who had limited information about the work Park

2

performed as a driver for Uber.  She provided copies of tax returns indicating Park had been paid by "Uber Technologies, Inc."  OSHA attempted to arrange a meeting with Uber to discuss Park's employment status and the circumstances surrounding his death, but Uber declined to participate.

## 2.    The administrative subpoena

On September 5, 2023, OSHA served Uber with an administrative subpoena, under Government Code section 11181, subdivision (e), and Labor Code section 6314, subdivision (c), seeking 20 separate categories of documents "relevant to the issue of whether Mr. Park was an employee of Uber Technologies or if he was an independent contractor," any documents related to Park's death, and additional requests directed more broadly to records related to other similarly situated Uber drivers.  OSHA asserted the requested records were necessary to resolve issues of Park's employment status and Uber's compliance with Title 8 of the California Code of Regulations.

Uber did not produce any documents, responding only with objections, including that (1) OSHA did not have jurisdiction to request documents or inspect its premises (citing Bus. & Prof. Code, § 7448 et seq.), (2) OSHA failed to obtain consent from Uber or an inspection warrant in accordance with Labor Code section 6314, (3) the requests sought confidential and proprietary business information, (4) the requests invaded the privacy rights of third parties, including users of Uber's app-based digital platforms, and (5) the requests were overbroad, indefinite, and sought irrelevant records.

## 3.    Petition to compel compliance

On October 20, 2023, OSHA initiated this action in the superior court by filing a petition to compel Uber to produce the

requested records.  (Gov. Code, § 11187.)  OSHA asserted the requested documents were relevant to the discharge of its duties, including its mandatory duty to investigate on-the-job fatalities, and to determine whether Park was an employee of Uber, and whether Uber had violated any laws or safety orders.

The hearing on OSHA's petition was continued due to the court's unavailability, and again after the court requested supplemental briefing.

On December 7, 2023, while its petition to compel compliance was pending, OSHA issued a citation to Uber under Labor Code section 6317.  Item 1 of the citation was a regulatory violation based on Uber's failure to immediately report the death of Park.  (Cal. Code Regs., tit. 8, § 342.)  The civil penalty imposed was $5,000 to be abated by January 26, 2024.  Item 2 of the citation was a general violation based on Uber's failure to demonstrate the institution of an effective injury and illness prevention program.  (Cal. Code Regs., tit. 8, § 3203.)  The civil penalty imposed was $1,350 to be abated by January 26, 2024.

Uber did not appeal the citation.

### 4. The trial court's order

The hearing on OSHA's petition took place on June 20, 2024.  After argument, the trial court granted OSHA's petition, ordering Uber to produce the requested documents within 30 days.  The court did not limit or modify the scope of any of the 20 categories of requested documents.

This appeal followed.  On April 9, 2025, we granted Uber's petition for a writ of supersedeas, staying the trial court's order pending resolution of this appeal or further order of this court.

4

## DISCUSSION

We discuss the applicable law before turning to a discussion of Uber's contentions challenging the validity of the trial court's order enforcing OSHA's administrative subpoena.

### 1. Government Code section 11180 et seq.

More than 60 years ago in *Brovelli v. Superior Court of Los Angeles County* (1961) 56 Cal.2d 524 (*Brovelli*), the Supreme Court reaffirmed the broad authority of state agencies to investigate matters within the scope of their statutory jurisdiction, and to issue administrative subpoenas in those investigations, explaining: "There is no constitutional objection to a system under which the heads of departments of government may compel the production of evidence for purposes of investigation, without instituting formal proceedings against the one from whom the evidence is sought or filing any charges against him. As has been said by the United States Supreme Court, the power to make administrative inquiry is not derived from a judicial function but is more analogous to the power of a grand jury, which does not depend on a case or controversy in order to get evidence but can investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" (*Brovelli*, at p. 529, quoting *United States v. Morton Salt Co.* (1950) 338 U.S. 632, 642–643.)

Government Code section 11180 states that the head of state agencies and departments "may make investigations and prosecute actions concerning: [¶] (a) All matters relating to the business activities and subjects under the jurisdiction of the department. [¶] (b) Violations of any law or rule or order of the department. [¶] (c) Such other matters as may be provided by law." (*Ibid*.) Under section 11181, department heads may, in

5

connection "with any investigation or action authorized" by section 11180, issue subpoenas for the production of documents and tangible things pertinent to "any inquiry, investigation, hearing, proceeding, or action conducted in any part of the state." (§ 11181, subd. (e).) Department heads may delegate the powers conferred by section 11180 to other officers of the department. (§ 11182.) Department heads are further authorized to file a petition in a court of competent jurisdiction to compel compliance with an administrative subpoena. (§ 11187; see also *Brovelli*, *supra*, 56 Cal.2d at p. 527.)

*Brovelli* instructs that administrative subpoenas are valid and enforceable and do not offend the Fourth Amendment so long as they (1) inquire into matters "which the agency demanding production is authorized to make," (2) they are "not too indefinite" in scope, and (3) the information sought is "reasonably relevant" to the agency's inquiry. (*Brovelli*, *supra*, 56 Cal.2d at p. 529.)

## 2.    The Labor Code

California has long regulated matters of occupational safety and health. (*Solus Industrial Innovations, LLC v. Superior Court* (2018) 4 Cal.5th 316, 328.) In 1973, with the passage of the California Occupational Safety and Health Act, the Legislature made substantial revisions to the statutory scheme. (*Solus Industrial Innovations*, at pp. 328–329.) The California Occupational Safety and Health Act was passed "for the purpose of assuring safe and healthful working conditions for all California working men and women by authorizing the enforcement of effective standards, assisting and encouraging employers to maintain safe and healthful working conditions, and by providing for research, information, education, training, and

6

enforcement in the field of occupational safety and health." (Lab. Code, § 6300.)

Under the amended statutory scheme, OSHA was granted "exceedingly broad authority" to enforce regulations to achieve safe working environments for workers throughout the state. (*United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.* (1982) 32 Cal.3d 762, 767 (*United Air Lines*).) Labor Code section 6307 declares that OSHA "has the power, jurisdiction, and supervision over every employment and place of employment in this state, which is necessary adequately to enforce and administer all laws and lawful standards and orders, or special orders requiring such employment and place of employment to be safe, and requiring the protection of the life, safety, and health of every employee in such employment or place of employment."

Labor Code section 6309 vests OSHA with the authority to "summarily investigate," on its own motion or upon a third-party complaint, any "employment" or "place of employment" that it "has reason to believe … is not safe or is injurious to the welfare of an employee."

Labor Code section 6313 imposes a mandatory duty on OSHA to investigate the cause of any employment accident that results in a fatality, unless it determines that an investigation is unnecessary. (*Id.*, subd. (a).) Moreover, OSHA has the discretion to undertake an investigation of any other occupational accident "which occurs within the state in any employment or place of employment, or which directly or indirectly arises from or is connected with the maintenance or operation of the employment or place of employment." (*Id.*, subd. (b).)

Under Labor Code section 6314, OSHA has the authority to inspect a place of employment, and to order an employer to

7

preserve physical materials, other tangible items, and an accident site pending completion of an investigation.  Under subdivision (c) of section 6314, OSHA "may issue subpoenas to compel the attendance of witnesses and the production of books, papers, records, and physical materials, administer oaths, examine witnesses under oath, take verification or proof of written materials, and take depositions and affidavits for the purpose of carrying out the duties of the division."  (*Ibid.*)

In addition, OSHA may, during an "investigation of the policies and practices of an employer or a related employer entity, … issue a subpoena if the employer or the related employer entity fails to promptly provide the requested information, and may enforce the subpoena if the employer or the related employer entity fails to provide the requested information within a reasonable period of time."  (Lab. Code, § 6317.9.)

### 3. The Protect App-Based Drivers and Services Act

In the general election of November 2020, California voters passed Proposition 22, otherwise known as the Protect App-Based Drivers and Services Act, which enacted sections 7448 through 7467 of the Business and Professions Code.  The purpose of the legislation was "[t]o protect the basic legal right of Californians to choose to work as independent contractors with rideshare and delivery network companies throughout the state" (Bus. & Prof. Code, § 7450, subd. (a)), "[t]o require rideshare and delivery network companies to offer new protections and benefits for app-based rideshare and delivery drivers" (*id.*, subd. (c)), and "[t]o improve public safety by requiring criminal background checks, driver safety training, and other safety provisions to help ensure app-based rideshare and delivery drivers do not pose a threat to customers or the public" (*id.*, subd. (d)).

8

Business and Professions Code section 7451 enumerates four conditions that must be established in order for an app-based driver to be considered an independent contractor, rather than an employee. Section 7451 states: "Notwithstanding any other provision of law, including, but not limited to, the Labor Code, the Unemployment Insurance Code, and any orders, regulations, or opinions of the Department of Industrial Relations or any board, division, or commission within the Department of Industrial Relations, an app-based driver is an independent contractor and not an employee or agent with respect to the app-based driver's relationship with a network company *if the following conditions are met*:

"(a) The network company does not unilaterally prescribe specific dates, times of day, or a minimum number of hours during which the app-based driver must be logged into the network company's online-enabled application or platform.

"(b) The network company does not require the app-based driver to accept any specific rideshare service or delivery service request as a condition of maintaining access to the network company's online-enabled application or platform.

"(c) The network company does not restrict the app-based driver from performing rideshare services or delivery services through other network companies except during engaged time.

"(d) The network company does not restrict the app-based driver from working in any other lawful occupation or business." (Bus. & Prof. Code, § 7451, italics added; *Castellanos v. State of California* (2024) 16 Cal.5th 588, 595 [acknowledging independent contractor status applies only so "*long as several conditions are met*" (italics added)].)

9

4. **OSHA has the authority to issue an administrative subpoena to determine its statutory jurisdiction to investigate**

Uber contends the trial court's order violates the first element of the *Brovelli* test which states that an administrative subpoena is valid *only* if it inquires into matters "which the agency demanding production is authorized to make." (*Brovelli, supra*, 56 Cal.2d at p. 529.) Uber acknowledges that OSHA is entitled to issue subpoenas to employers and to make investigative inquiries regarding employees. But Uber says it was not Park's employer since he was an independent contractor under Business and Professions Code section 7451. Uber argues the trial court failed to resolve this threshold jurisdictional question, and should have required OSHA to first bring a declaratory relief action to secure an order in its favor before it could issue any subpoena. We do not agree.

It is well settled that "[a]n administrative agency has the authority to conduct an investigation and to subpoena records to determine whether the entity under investigation is subject to the agency's jurisdiction and whether there have been violations of provisions over which the agency has jurisdiction." (*Millan v. Restaurant Enterprises Group, Inc.* (1993) 14 Cal.App.4th 477, 487 [division of labor standards enforcement had authority to issue subpoena to determine whether the defendant was subject to vacation pay requirements under the Labor Code]; accord, *Okla. Press Pub. Co. v. Walling* (1946) 327 U.S. 186, 192, 215–217 [subpoena by administrator at Department of Labor properly sought information about whether certain newspaper entities were subject to the Fair Labor Standards Act]; *Younger v. Jensen* (1980) 26 Cal.3d 397, 405 [Attorney General had authority to

10

subpoena records not only to determine existence of antitrust violations, but with respect to California's jurisdiction to proceed]; *People v. Alorica Inc.* (2022) 77 Cal.App.5th 60, 66 [Attorney General had authority to subpoena records to determine if corporate entity qualified as a debt collector under the Rosenthal Act].)

Thus, OSHA had the authority to subpoena records from Uber to determine whether Park was an employee or an independent contractor within the meaning of Business and Professions Code section 7451, and to determine whether Uber had taken any actions that contributed to Park's on-the-job accident. OSHA had a mandatory statutory duty to investigate Park's death, which included resolving whether Uber was properly deemed Park's employer at the time of the accident. As a state agency with broad enforcement and investigatory duties, OSHA could investigate " 'merely on suspicion that the law [was] being violated, or even just because it want[ed] assurance that it [was] not.' " (*Brovelli*, *supra*, 56 Cal.2d at p. 529.) OSHA was not required to first obtain a declaratory judgment finding Park to be an employee before it could undertake an investigation and issue a subpoena to Uber.

We also reject Uber's contention that OSHA was not entitled to an order enforcing its subpoena because it failed to carry its burden of proof that Park was an employee and not an independent contractor. We are not persuaded Business and Professions Code section 7451 places any burden on OSHA where OSHA is still investigating the facts relevant to its jurisdiction.

Irrespective of whether OSHA should ultimately be expected to bear the burden of proof at some future point, it is, at this time, entitled to enforce its subpoena to obtain those

11

documents relevant to establish its jurisdiction to proceed and to satisfy itself that Uber was compliant with Business and Professions Code section 7451.

## 5. OSHA is not limited to issuing administrative subpoenas only in connection with an on-site inspection of a place of employment

Uber also contends the trial court's order is invalid because it improperly expanded OSHA's statutory authority to issue administrative subpoenas. Uber argues that subdivision (c) of Labor Code section 6314 is not a lawful basis to issue a subpoena divorced from a duly instituted investigation or inspection of a place of employment. Uber says OSHA cannot issue a subpoena in a vacuum, but can only do so in the context of conducting an inspection of an employer's place of employment under subdivision (a) of section 6314, or after having obtained a warrant to inspect under subdivision (b). We reject Uber's interpretation of the statutory language.

In answering any question of statutory interpretation, "our goal is to effectuate the Legislature's intent." (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630.) " ' "When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls." [Citation.] "[W]henever possible, significance must be given to every word [in a statute] in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage." [Citation.] "[W]e may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results." ' " (*Ibid.*) Furthermore, "[p]otentially conflicting statutes must be read in the context of

the entire statutory scheme, so that all provisions can be harmonized and given effect." (*Voices of the Wetlands v. State Water Resources Control Bd*. (2011) 52 Cal.4th 499, 519.)

Where statutory language is susceptible of more than one reasonable interpretation, "we consider 'the ostensible objectives to be achieved by the statute, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction and the statutory scheme of which the statute is a part.' " (*Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 865; *People v. Jackson* (2025) 110 Cal.App.5th 128, 166–167.)

Uber's interpretation of Labor Code section 6314 is strained and unreasonably narrow. Our Supreme Court has instructed that the provisions of the Labor Code are to be broadly construed in favor of the protection of workers. "When construing provisions of the Labor Code, ' " '[t]ime and again, we have characterized that purpose as the protection of employees—particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code.' " ' [Citation.] We therefore ' " 'liberally construe the Labor Code … to favor the protection of employees.' " ' " (*People ex rel. Garcia-Brower v. Kolla's, Inc.* (2023) 14 Cal.5th 719, 725; accord, *Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 839; *United Air Lines*, *supra*, 32 Cal.3d at p. 771; see also 2 Wilcox, Cal. Employment Law (2026) Subpoenas, Deposition, and Statements Under Oath, § 21.41 [acknowledging OSHA's broad authority to issue subpoenas in order "to carry out its enforcement duties"].)

The language of Labor Code section 6314, subdivision (c), is clear and unambiguous. It provides that OSHA "may issue

13

subpoenas to compel the attendance of witnesses and the production of books, papers, records, and physical materials, administer oaths, examine witnesses under oath, take verification or proof of written materials, and take depositions and affidavits for the purpose of carrying out the duties of the division." It does not state that this authority can only be exercised in the course of an inspection of a place of employment, and we do not believe Uber's interpretation is supported by the mere fact the provision is included in a section that also describes OSHA's authority to inspect a place of employment.

The language of section 6314 is substantially similar to and consistent with OSHA's broad authority to issue administrative subpoenas under Government Code section 11181. We do not read Labor Code section 6314 as purporting to limit that well-settled authority. Moreover, we cannot conceive of any valid policy rationale for constraining OSHA's ability to issue administrative subpoenas only in connection with an onsite inspection of an employer's place of business. OSHA's investigatory powers and enforcement duties are much broader than merely conducting on-site inspections.

**6.    The subpoena was not mooted by issuance of the citation**

Uber also contends that even assuming OSHA had the authority to issue the subpoena, the subpoena was mooted in December 2023 when OSHA issued its citation to Uber under Labor Code section 6317. Once again, we reject Uber's interpretation of the statutory language.

The six-month statutory period set forth in Labor Code section 6317, subdivision (e)(1), is clear and unambiguous. It states, in relevant part, that "[a] citation or notice shall not be

14

issued by the division more than six months after the occurrence of the violation." (Lab. Code, § 6317, subd. (e)(1).) Occurrence is defined to include the date on which OSHA first discovers a violation. (*Ibid*.) The six-month statutory deadline applies only to issuance of a citation or notice. Nothing in the language of section 6317 is reasonably construed to apply to other actions by OSHA.

Had the Legislature intended to impose a time limit on OSHA's investigatory powers or enforcement authority, it would have said so clearly and explicitly. It did not do so, and it is not our role to engraft a time limit onto OSHA's authority by implication. Moreover, adopting Uber's interpretation would have absurd consequences, encouraging employers to stonewall and delay cooperation with OSHA's investigatory efforts, forcing OSHA to issue a citation before the six-month period ran out, only to moot its ability to complete its investigation. Here for instance, there was delay in obtaining an order enforcing the subpoena due to matters beyond OSHA's control, including continuances ordered by the court due to its unavailability and the court's desire for supplemental briefing. OSHA issued the citation to Uber while its petition to compel remained pending. We do not believe the statutory language should be interpreted in a manner that gives employers the ability to thwart OSHA's enforcement and investigatory responsibilities.

7.   **The trial court must reconsider issues of relevance and overbreadth on remand**

The trial court ordered Uber to produce documents as to all 20 categories of requests without limitation or modification. The record is not well developed as to the relevance of certain requests, particularly request Nos. 8 through 20, which are

broadly worded, and made even broader still by the definitions included in the subpoena.  For instance, " 'DRIVER(S)' " is defined as an "app-based driver or person who uses the UBER TECHNOLOGIES online-enabled application or platform." The inclusion of the word "person" could be construed to include customers of the delivery platform.  Further, " 'USER(S)' " is defined as any "app-based customer, rider or person who uses the UBER TECHNOLOGIES online-enabled application or platform." There is inadequate discussion explaining how records related to users or customers of Uber's digital platforms are relevant to determining Park's status as an independent contractor, the circumstances surrounding his death, or any actions Uber may have taken or not taken regarding training or prevention that may have contributed to the fatality.

On remand, the trial court is directed to conduct such further proceedings as are necessary to reconsider the scope of the document requests under *Brovelli*, and issue a new order compelling production as appropriate.

**DISPOSITION**

The order compelling production of documents is reversed to the extent it orders production as to all requested documents without limitation. On remand, the superior court shall conduct such further proceedings as are necessary to reconsider the scope of the document requests, and issue a new order compelling production as appropriate.

In all other respects, the order is affirmed.

The parties shall bear their own respective costs of appeal.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


SCHERB, J.


17