No. 51,646

THE CESSNA AIRCRAFT COMPANY, *Appellee,* v. KANSAS COMMISSION ON CIVIL RIGHTS, *Appellant.*

(622 P.2d 124)

Opinion filed January 17, 1981.

*Roger W. Lovett,* of Topeka, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for appellant.

*Alvin D. Herrington,* of McDonald, Tinker, Skaer, Quinn & Herrington, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Plaintiff-appellee, Cessna Aircraft Company (Cessna), filed this action in district court to enjoin the Kansas Commission on Civil Rights (KCCR) from proceeding with an investigation of a complaint filed by a Cessna employee, or enforcing a subpoena duces tecum issued in conjunction with the

investigation. The district court, after a hearing in which the KCCR declined to present any evidence, issued an injunction limiting the scope of the investigation and likewise modified the subpoena, limiting its scope. The KCCR has appealed and the case was transferred from the Court of Appeals pursuant to K.S.A. 1979 Supp. 20-3017.

In June, 1977, a complaint was filed under the terms of the Kansas Acts Against Discrimination (K.S.A. 44-1001 *et seq.*, as amended and supplemented) by Nancy Cotter with the KCCR, alleging that Cessna was guilty of unlawful employment discrimination based upon sex. Her complaint based upon a violation of K.S.A. 1979 Supp. 44-1009(*a*)(1), omitting formal parts, reads:

1. "I am a woman.

2. "In 1974, I assumed a job that was previously held by a male at Cessna Aircraft Company with the same job responsibilities that the male had, but my grade level was a grade five (5), whereas his was a grade three (3).

3. "In August, 1976, I became an accounts payable section leader and have discovered since that time, that my rate of pay was lower than male section leaders who do substantially the same work.

4. "On or about March 1, 1977, I asked for the opportunity to apply for a higher paying job with the same grade level as I currently hold. The accounting manager, Mr. R. W. Lester, informed me that if I took the job, I would have to take a cut in pay. This is in the face of the fact that I had more seniority than the person who was holding the job.

5. "When a division of responsibility was made in my department, I supervised only women and Warren Sinclair supervised the men. *The very absence of women in higher management indicates that there is a pervasive pattern of practice of sex discrimination at Cessna. There is discrimination in the assignment of women subordinates; a practice of not assigning male subordinates to those few women who are in any kind of managerial positions. Those women who are not hourly employees, but are labeled salary employees consistently receive the lowest salary of all salary employees. There is also discouragement of women attempting to receive promotions. When women receive new assignments, there is a change of grade level (pay scale) which is not done when men in similar situations get a job assignment.* [Emphasis added for ready reference.]

6. "For monthly salary males there is a company barber shop, so that those males may have their hair cut on company time. To my knowledge, women can not leave on company time to have their hair fixed or cut, there is no company beauty salon. Males are also given flying lessons because of job related roles. To the best of my knowledge, no women have been afforded the same privileges.

7. "I believe there is discrimination against women in areas of pay, promotion, benefits, misleading and inaccurate merit systems. There is also discrimination against women in the area of hourly, weekly, or monthly pay systems. There is also discrimination in classification and assignment of jobs.

8. "I hereby charge Cessna Aircraft Company and their representatives with a direct violation of the Kansas Act Against Discrimination for discriminating against me because of my sex, and others similarly situated in the terms, conditions, and privileges of our employment under which we have to work, in the areas of pay, promotions, benefits, misleading and inaccurate merit systems, and in the classifications and assignments of jobs."

We have added the paragraph numbers 1 through 8 for ready reference throughout the opinion.

In April, 1977, Ms. Cotter filed a similar complaint with the Equal Employment Opportunity Commission alleging a violation of the Civil Rights Act of 1964, as amended, and in August, 1978, she filed another complaint with the KCCR alleging violations of K.S.A. 1979 Supp. 44-1009(a)(1), (4). The latter two complaints are not involved in this proceeding.

At the outset we will attempt to clarify certain terminology which appears throughout the pleadings, briefs and arguments in this case and which has appeared in prior cases of the courts. On numerous occasions the parties refer to a "pattern of practice" investigation, a "pattern and practice" investigation, a "pattern or practice" investigation, and individual investigations of unlawful employment practices. K.S.A. 1979 Supp. 44-1009 defines certain unlawful employment practices which may be the basis for an investigation under any of the frequently used designations. The Kansas Acts Against Discrimination (K.S.A. 44-1001 *et seq.*) does not attempt to define the various terms which have been adopted by the courts and the parties to this action other than specific acts which constitute unlawful employment practices. See K.S.A. 1979 Supp. 44-1002(g) and 44-1009(a) and (b). The statutes do, however, refer to a "practice of discrimination" and a "pattern or practice of discrimination" which, when read with all the statutes, obviously refers to something other than an individual or isolated complaint of an "unlawful employment practice." K.S.A. 1979 Supp. 44-1005. As we perceive it, any violation of 44-1009(a) or (b) could be the subject of an individual complaint by the particular employee who claims to have been subjected to the unlawful employment practice. On the other hand, if such violations are more pervasive in scope and apply throughout all or a substantial portion of the work force of a particular employer, then such violations could logically be designated as a pattern or practice of unlawful employment discrimination. As we see the distinction, if the violation is isolated or peculiar when applied to

a particular individual it is an unlawful employment practice or act, but if it applied to numerous employees, it appears to be called a pattern and/or practice of discrimination. Complaints affecting numerous employees in the employers' work force appear to have been interchangeably designated pattern of practice complaints, pattern or practice complaints, and pattern and practice complaints, and such language will be so considered in this opinion. Federal courts have also recognized a distinction between an individual complaint and a pattern or practice complaint. *Teamsters v. United States,* 431 U.S. 324, 52 L.Ed.2d 396, 97 S.Ct. 1843 (1977); *United States v. Gilman,* 341 F. Supp. 891 (S.D.N.Y. 1972).

Ms. Cotter was first employed in July, 1973, by Cessna in department 94 at its Pawnee Division in Wichita and in November, 1973, transferred to department 92. She has only worked in departments 92 and 94, both of which are accounting departments at the Pawnee Division. At the time of trial, she was a section leader in department 92, a supervisory position, drawing a weekly salary of $320.00. She is a grade B, non-technical, administrative weekly-salaried supervisor.

A copy of the Cotter complaint was served upon Cessna by mail on June 27, 1977. Cessna responded on September 9, 1977. On March 22, 1978, Mr. Earl Haehl, a representative of the KCCR, appeared at the Cessna Pawnee Division and presented a records request as a part of his investigation of the complaint. During a conversation with Cessna personnel officials, Mr. Haehl advised he was investigating a "pattern and practice complaint" based upon the allegations of Ms. Cotter. When asked for details as to the scope and nature of the investigation, Mr. Haehl merely stated it was a broad investigation based upon the Cotter complaint. The records requested by Mr. Haehl all pertained to accounting personnel and included job descriptions, personnel files, salary histories, EEO-1 reports (federal reports required by Title VII of the Federal Civil Rights Act, 42 U.S.C. 2000e *et seq.*), and a copy of the company employees handbook. The records and items requested were furnished by Cessna. On March 28, 1978, Mr. Haehl advised that he would like to interview Ms. Cotter's superiors in accounting department 92. The interviews were arranged and conducted the next day. Mr. Haehl limited the scope of his interviews to inquiries about Ms. Cotter as an individual in the accounting department.

On April 12, 1978, Mr. Haehl again appeared at Cessna and requested access to the records of all personnel in the Pawnee Division, along with records of all promotions in the entire division during 1977. The request was refused by Cessna on the basis the request went far beyond the individual complaint of Ms. Cotter and in the opinion of Cessna was unnecessary to the investigation of her complaint.

On May 5, 1978, the KCCR served a subpoena duces tecum upon Cessna commanding certain records to be produced on May 15, 1978. The subpoena, directed to Bill Simons, manager of employee relations at Cessna, stated:

"Pursuant to the authority granted the Kansas Commission on Civil Rights by K.S.A. 1977 Supp. 44-1004(5), you are hereby commanded to appear before duly authorized representatives of the Commission on Monday, May 15, 1978, at the hour of 1 P.M. in the office of Bill Simons, Manager of Employee Relations, Cessna Aircraft Company-Pawnee Division, 5800 East Pawnee, Wichita, Kansas, to produce the following documents for inspection in the above-captioned matter:

"1. A current copy of the 'Employee Master List' for the Pawnee Division.
"2. Complete personnel files and 'Job Classification Records' for all employees on the 'Employee Master List' from which 500 will be selected by random sampling procedures.
"Hereof fail not under penalty of law."

At the time of service of the subpoena, the Pawnee Division had 5,399 employees and at time of trial, 5,533.

On May 10, 1978, Cessna instituted this action for a restraining order, temporary injunction and permanent injunction to prevent the KCCR from enforcing the subpoena duces tecum and to limit the scope of the investigation. Specifically, Cessna, in its petition and amendments thereto, sought:

"11. Based upon the foregoing allegations, and pursuant to K.S.A. 60-903, plaintiff is entitled to and makes application for a restraining order, which restrains and prohibits the defendant Commission from directly or indirectly enforcing said Subpoena and from otherwise attempting to obtain the documents until a hearing can be held on plaintiff's application for a temporary injunction, as hereinafter alleged; otherwise immediate and irreparable harm and damage will result to plaintiff.

"12. Plaintiff also seeks, after reasonable notice to defendant and a hearing, a temporary injunction and a permanent injunction, enjoining, restraining and prohibiting the defendant Commission from obtaining or requiring plaintiff to provide, directly or indirectly, the documents set forth in the Subpoena, except those documents and portions thereof which are described in paragraph 13, below, and temporarily and permanently enjoin the investigation by the defend-

ant Commission of the alleged pattern or practice of discrimination because of the failure of the Commission to properly give notice to the plaintiff of the nature and scope of the investigation as required by KSA 44-1005.

"13.   Plaintiff alleges that the only portions of the Employee Master List, and the only personnel files, which are relevant to Nancy Cotter's complaint are those portions of said master list and those personnel files which pertain to Grade B, non-technical, weekly salaried supervisors, and which portions of said master list and which personnel files plaintiff will make available to the defendant if the Subpoena is so modified by the Court."

A temporary restraining order was issued May 10, 1978, restraining the KCCR from attempting to enforce the subpoena until a hearing could be held on the request for a temporary and permanent injunction. The matter finally came before the court on May 24, 1979. Cessna produced evidence in support of its petition and the KCCR declined to introduce any evidence except a copy of Nancy Cotter's complaint which had already been introduced by Cessna. The court made detailed findings and orders as follows:

"1.   The structure of K.S.A. 44-1005 is to permit investigation by the defendant Commission after notice to the employer with particularity.

"2.   As the court construed K.S.A. 44-1005, an investigation may be made by the Kansas Commission on Civil Rights of a pattern of practice of discrimination pursuant to an individual verified complaint filed under the portion of the first paragraph of said statute, as described in paragraph 1 of these findings. However, the·Commission is bound by the allegations made in such individual complaint, and the particulars of a pattern of practice of discrimination, as alleged in such complaint, limit the nature and scope of the Commission's right and power to investigate.

"3.   The individual complaint filed by Nancy Cotter (plaintiff's trial Exhibit 2) with the Kansas Commission On Civil Rights contains some particulars or specific allegations in the following portion thereof.

'The very absence of women in higher management indicates that there is a pervasive pattern of practice of sex discrimination at Cessna. There is discrimination in the assignment of women subordinates, a practice of not assigning male subordinates to those few women who are in any kind of managerial positions. Those women who are not hourly employees, but are labeled salary employees consistently receive the lowest salary of all salary employees. There is also discouragement of women attempting to receive promotions. When women receive new assignments, there is a change of grade level (pay scale) which is not done when men in similar situations get a job assignment.'

An investigation by the Commission within the particulars of the allegations in the quoted paragraph of Nancy Cotter's complaint is proper. However, the nature and scope of the investigation must be limited to hourly-paid and weekly-salaried employees in the accounting departments where plaintiff has been employed at the Pawnee Division, Departments 92 and 94, and, beyond said accounting

departments the investigation must be limited to weekly-salaried, Grades B and C, non-technical, administrative supervisors at the Pawnee Division.

"4.  K.S.A. 44-1004(5) grants the right and power to the Commission to subpoena witnesses and documents but provides that the Commission may issue subpoenas to compel access to or the production of records, documents and materials 'to the same extent and subject to the same limitations as would apply if the subpoena or interrogatories were issued or served in aid of a civil action in the district court.'

"The court construes K.S.A. 44-1004 as limiting the Commission's subpoena powers in the same manner and to the same extent such powers are limited in civil actions under Chapter 60 of the Kansas Statutes Annotated. Thus, the tests and rules which are to be applied to subpoenas issued by the Commission are the same as those which are applied to civil actions under Chapter 60 of the Kansas Statutes Annotated.

"5.  Based upon the evidence and applicable law, as construed by this court, the production by the plaintiff of the records and documents for all employees of the Pawnee Division of the Cessna Aircraft Company, as demanded by the Subpoena Duces Tecum issued by the Commission, would be burdensome and oppressive to the plaintiff, and the only material and relevant records which are to be produced are as follows:

"(a)  Such subpoenaed documents as pertain to all hourly-paid and weekly-salaried employees at the Pawnee Division in accounting departments 92 and 94.

"(b)  Such subpoenaed documents as pertain to all weekly-salaried, Grades B and C, non-technical, administrative supervisors at the Pawnee Division.

"6.  The subject Subpoena Duces Tecum should be quashed except for the documents specified in paragraph 5(a) and 5(b) above, and the Subpoena Duces Tecum should be modified to include only the documents specified in paragraph 5(a) and 5(b) above.

"7.  The Kansas Commission On Civil Rights should be temporarily and permanently enjoined from conducting any investigation with regard to witnesses, documents or otherwise, based upon the individual verified complaint of Nancy Cotter (plaintiff's trial Exhibit 2), other than an investigation pertaining to hourly-paid and weekly-salaried employees of the plaintiff's accounting departments, Departments 92 and 94, and pertaining to weekly-salaried, Grades B and C, non-technical, administrative supervisors at the Pawnee Division. The Kansas Commission On Civil Rights should also be temporarily and permanently enjoined from making an investigation based on the said verified complaint of Nancy Cotter, except with regard to the specific allegations set forth in the portion of her verified complaint which is quoted in paragraph 3 above. Further, that no money damages will be sustained by the defendant Commission, and that no bond should be required of the plaintiff in connection with the temporary and permanent injunctions to be issued by the court.

"8.  The costs of this action should be assessed against the defendant and judgment for such costs should be rendered in favor of the plaintiff.

"IT IS THEREFORE BY THE COURT ORDERED, ADJUDGED AND DECREED, as follows:

"1.  That the subpoena Duces Tecum (Exhibit A to plaintiff's Verified Com-

plaint), issued by the defendant Kansas Commission on Civil Rights and served upon the plaintiff, The Cessna Aircraft Company, Pawnee Division, should be and the same is hereby quashed except for the documents specified in paragraph 5(a) and 5(b) of the court's findings, above, and said Subpoena Duces Tecum should be and the same is hereby modified to include only the documents specified in paragraph 5(a) and 5(b) of the court's findings, above.

"2.   That The Kansas Commission On Civil Rights should be and it is hereby temporarily and permanently enjoined from conducting any investigation of the plaintiff or of any witnesses or documents, based upon the verified complaint of Nancy Cotter (plaintiff's trial Exhibit 2), other than an investigation pertaining to and limited to: (1) hourly-paid and weekly-salaried employees of accounting departments 92 and 94 at the Pawnee Division; (2) weekly-salaried, Grades B and C, non-technical, administrative supervisors at the Pawnee Division; (3) Nancy Cotter's individual complaints; and (4) to the specific allegations of a pattern of practice of discrimination as set forth in the portion of her verified complaint which is quoted in paragraph 3 of the court's findings, above.

"3.   That the temporary and permanent injunctions granted herein by this court should be and they are hereby issued without requiring a bond of the plaintiff.

"4.   That all of the findings set forth in paragraphs 1 through 5, inclusive, of the court's findings, above, should be and the same are hereby made orders and judgments of this court.

"5.   That the costs of this action should be and they are hereby assessed against the defendant Kansas Commission on Civil Rights and the plaintiff is granted judgment for said costs."

The KCCR has appealed. Unfortunately, the parties do not agree as to the issues on appeal and Cessna has not responded in its brief to the issues asserted by the KCCR in the order presented by the appellant. This always makes the task of this court considerably more difficult. Basically the KCCR contends (1) its subpoena powers are not subject to or limited by the same tests that are applied to civil actions under K.S.A. 60-245(*b*); (2) the trial court erred in finding the subpoena to be burdensome and oppressive; (3) the trial court erred in limiting the scope of the investigation to the portion of the complaint set out in paragraph 3 of the court's findings; (4) the trial court erred in partially quashing or modifying the subpoena; and (5) the trial court erred in assessing costs to KCCR. Cessna, on the other hand, asserts the trial court committed no error and in addition alleges (1) a pattern of practice investigation cannot be based upon an individual complaint, and (2) the notice, which consisted of the Cotter complaint, does not include sufficient particularity and therefore is insufficient to support a pattern of practice investigation.

At the outset we point out that Cessna raises no questions or

argument about the notice and sufficiency of Ms. Cotter's individual complaints which Cessna insists are confined to paragraphs 2, 3, 4 and the first sentence of paragraph 5 of the complaint. It acknowledges the complaint, to that extent, sets forth with sufficient particularity her individual complaints and that they are appropriate for investigation by KCCR.

The pertinent portions of the applicable statutes are set forth below.

K.S.A. 1979 Supp. 44-1004:

"The commission shall have the following functions, powers and duties:

. . . .

"(5) To subpoena witnesses, compel their appearance, require the production for examination of records, documents and other evidence or possible sources of evidence and to examine, record and copy such materials and take and record the testimony or statements of such persons. *The commission may issue subpoenas to compel access to or the production of such materials, or the appearance of such persons, and may issue interrogatories to a respondent to the same extent and subject to the same limitations as would apply if the subpoena* or interrogatories *were issued or served in aid of a civil action in the district court."* (Emphasis added.)

K.S.A. 1979 Supp. 44-1005:

"Any person claiming to be aggrieved by an alleged unlawful employment practice or by an alleged unlawful discriminatory practice may, personally or by an attorney-at-law, make, sign, and file with the commission a verified complaint in writing which shall state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful employment practice complained of or the name and address of the person alleged to have committed the unlawful discriminatory practice complained of, and which shall set forth the particulars thereof and contain such other information as may be required by the commission.

"The commission upon its own initiative or the attorney general may, in like manner, make, sign and file such complaint. Whenever the attorney general has sufficient reason to believe that any person as herein defined is engaged in a practice of discrimination, segregation or separation in violation of this act, he or she may make, sign and file a complaint. Any employer whose employees or some of whom, refuse or threaten to refuse to cooperate with the provisions of this act, may file with the commission a verified complaint asking for assistance by conciliation or other remedial action.

"Whenever any problem of discrimination because of race, religion, color, sex, physical handicap, national origin or ancestry arises, or whenever the commission has, in its own judgment, reason to believe that any person as herein defined has engaged in an unlawful employment practice or an unlawful discriminatory practice in violation of this act, or has engaged in a pattern or practice of discrimination, the commission may conduct an investigation without filing a complaint and shall have the same powers during such investigation as provided

for the investigation of complaints. The person to be investigated shall be advised of the nature and scope of such investigation prior to its commencement. The purpose of the investigation shall be to resolve any such problems promptly. In the event such problems cannot be resolved within a reasonable time, the commission may issue a complaint whenever the investigation has revealed a violation of the Kansas act against discrimination has occurred. The information gathered in the course of the first investigation may be used in processing the complaint."

### K.S.A. 1979 Supp. 44-1006:

"The provisions of this act shall be construed liberally for the accomplishment of the purposes thereof."

### K.S.A. 1979 Supp. 44-1009(a)(1):

"(a) It shall be an unlawful employment practice:

(1) For an employer, because of the race, religion, sex, physical handicap, national origin or ancestry of any person to refuse to hire or employ, or to bar or to discharge from employment such person or to otherwise discriminate against such person in compensation or in terms, conditions, or privileges of employment; or to limit, segregate, separate, classify or make any distinction in regards to employees; or to follow any employment procedure or practice which, in fact, results in discrimination, segregation or separation without a valid business motive."

### K.S.A. 60-245(b):

"(b) *For production of documentary evidence.* A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein; but the court, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may (1) quash or modify the subpoena if it is unreasonable or oppressive or (2) condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of 'the reasonable cost of producing the books, papers, documents, or tangible things."

As we view the issues in this case they are: (1) What are the tests to be applied in determining the limitations, if any, on the KCCR subpoena power under K.S.A. 60-245(b); (2) did the trial court abuse its discretion in limiting the scope of the subpoena duces tecum; and (3) did the trial court abuse its discretion in issuing the injunction?

Appellant, in support of its argument that the tests for modifying or quashing a subpoena duces tecum in a KCCR case are not the same as those for a civil action under K.S.A., ch. 60, relies heavily upon *Yellow Freight System, Inc. v. Kansas Commission on Civil Rights,* 214 Kan. 120, 519 P.2d 1092 (1974). At the time of the trial in *Yellow Freight,* K.S.A. 1971 Supp. 44-1004(5) read:

"(5) To hold hearings, subpoena witnesses, compel their attendance, administer oaths, take the testimony of any person under oath, and in connection therewith, or in connection with the investigation to require the production for examination of any books or papers pertinent to the proceedings, where a complaint has been properly filed with the commission. In case of the refusal of any person to comply with any subpoena issued hereunder, or to testify to any matter regarding which he may be lawfully questioned, the district court of any county may, upon application of the commission, order such person to comply with such subpoena and to testify; and failure to obey the court's order may be punished by the court as contempt. No person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he testifies or produces evidence, except that such person so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying. The immunity herein provided shall extend only to natural persons."

The emphasized portion of K.S.A. 1979 Supp. 44-1004(5), first adopted in 1972, did not become effective until after the *Yellow Freight* trial court decision. In *Yellow Freight* the KCCR was investigating a series of complaints which alleged racial discrimination in the company "layoff" practices. Apparently the complainants were over-the-road drivers for Yellow Freight and the KCCR sought to obtain employment histories of all over-the-road drivers hired during the preceding ten year period. The trial court granted an injunction against enforcement of the subpoena on the grounds it was not authorized at that stage of the proceedings. In reversing the district court, this court stated:

"General tenets of administrative law recognize that an agency charged with investigatory duties to ferret out violations of the law can issue subpoenas and make such investigations, even though no formal administrative hearing be pending. (*Brovelli v. Superior Court,* 56 Cal. 2d 524, 15 Cal. Rptr. 630, 364 P.2d 462; *Fielder v. Berkeley Properties Co.,* 23 Cal. App. 3d 30, 99 Cal. Rptr. 791; *United States·v. Morton Salt Co.,* 338 U.S. 632, 94 L.Ed. 401, 70 S.Ct. 357. If agencies charged with enforcement duties are to accomplish the tasks assigned them by legislative bodies, the following construction must be placed upon statutes granting administrative bodies subpoena powers:

'. . . [T]he heads of departments of government may compel the production of evidence for purposes of investigation, without instituting formal proceedings against the one from whom the evidence is sought or filing any charges against him. As has been said by the United States Supreme Court, the power to make administrative inquiry is not derived from a judicial function but is more analogous to the power of a grand jury, which does not depend on a case or controversy in order to get evidence but can investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." . . . (*Brovelli v. Superior Court,* supra, p. 529.)

The investigative and reporting duties assigned to the commission, when considered in the light of the statute's general purposes, lead us to the conclusion that the

legislature did not intend to limit the exercise of the commission's investigatory powers to the preliminary stages of the complaint procedure outlined in K.S.A. 1971 Supp. 44-1005. The commission must be free to investigate, which necessarily implies the use of its subpoena authority, if it is to carry out and give meaning to all the investigatory and reporting duties assigned it in K.S.A. 1971 Supp. 44-1004. The specific mention of subpoena power in connection with a scheduled formal hearing in K.S.A. 1971 Supp. 44-1005, cannot in any way be interpreted to limit the commission's power of subpoena. It is an extension of that power in aid of complainants and respondents. The district court's interpretation of the statutes is erroneous and the permanent injunction against the commission's subpoena is dissolved.

. . . .

"The respondent's contention that the documents need to be pertinent to a formal hearing is already discredited since we have held the commission's power to investigate and to subpoena does not depend upon the pendency of a formal complaint, proceeding or hearing.

"The respondent further contends the commission is under a burden to prove the relevancy of the subpoenaed employment records to prove or disprove the specific acts of discrimination charged by the complainants, and the commission failed to meet that burden.

"The weight of authority of administrative law refuses to apply the stringent relevancy requirements of subpoenas in aid of civil or criminal litigation to agency subpoenas. The test of relevancy we approve is set forth in *Brovelli*, supra, where it is held:

'. . . [I]t requires only that the inquiry be one which the agency demanding production is authorized to make, that the demand be not too indefinite, and that the information sought be reasonably relevant. (*United States v. Morton Salt Co.*, supra, 338 U.S. 632, 651-654; *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 202, *et seq.* [66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531].)' (p. 529)" *Yellow Freight Systems, Inc. v. KCCR*, 214 Kan. 123-25.

The issue in *Yellow Freight* hinged upon an interpretation of the statutes as to the subpoena power of the KCCR at a particular stage of the proceedings, and in connection therewith the court discussed the scope of the subpoena power of the KCCR. Additionally, the KCCR had limited its request to the records of other over-the-road drivers occupying jobs similar to the complainants.

After the passage of the 1972 amendments to the statute, this court again had an opportunity to examine the subpoena powers of the KCCR. In *Kansas Commission on Civil Rights v. Carlton*, 216 Kan. 735, 533 P.2d 1335 (1975), this court applied the test enunciated in *Yellow Freight*, stating:

"In *Yellow Freight System, Inc. v. Kansas Commission on Civil Rights*, 214 Kan. 120, 519 P.2d 1092, we were concerned with the scope of the KCCR's subpoena power. As adopted there the test of relevancy to be applied for docu-

ments subpoenaed is that the inquiry must be one which the civil rights commission is authorized to make, the demand for production must not be too indefinite and the information sought must be reasonably relevant." p. 741.

While the court recognized the test from *Yellow Freight*, it also recognized that the subpoena power of the KCCR is subject to K.S.A. 60-245(*b*) and cannot be unreasonable or oppressive.

Again in *Carlton*, the KCCR showed some restraint in its requests and the records sought were limited to similar events and situations existing at the job opportunity center at Hutchinson. The court quoted from *Yellow Freight* and stated:

" 'The code of civil procedure provides upon application of one against whom a subpoena is issued the court may quash *or modify* a subpoena if it is unreasonable and oppressive. (K.S.A. 1973 Supp. 60-245[*b*].)' (Emphasis supplied.) (p. 125.)

"It appears a district court has power to modify a subpoena and thus remove any objectionable features from it while preserving the remainder. See 9 Wright and Miller, Federal Practice and Procedure: Civil § 2457, pp. 437-438. We know of no reason why a district court should not, *a fortiori*, have the same power with respect to a subpoena duces tecum issued by KCCR and we so hold." p. 743.

See also *Atchison, T. & S.F. Rly. Co. v. Lopez*, 216 Kan. 108, 531 P.2d 455 (1975).

In *Lopez* the issue involved a "trackman" who was not retained as an employee because of his criminal record. It appears that trackmen constitute only one small segment of the right-of-way maintenance employees of the Santa Fe. It is one of 25 or 30 different classifications of right-of-way maintenance employees. Again, the KCCR had limited its subpoena request to comparable records of other trackmen in the Eastern division. No attempt was made to secure blanket access to the personnel files of all Santa Fe employees. The KCCR did not even seek access to the files of other employees in the right-of-way maintenance department. This court upheld the subpoena in *Lopez* but specifically recognized that if the subpoena was "oppressive or unreasonable" then it would be subject to modification or quashing by the district court.

There can be no question but that the 1972 amendment to 44-1004(5) subjects the KCCR to the same limitations as in other actions in the district court. The district court has the power to quash or modify a subpoena of the KCCR if the court finds it is unreasonable or oppressive. K.S.A. 60-245(*b*)(1). In determining whether the effects of a subpoena are unreasonable or oppressive, the court must apply the statute liberally to carry out the purposes

of the Kansas Acts Against Discrimination. K.S.A. 1979 Supp. 44-1006. However, that is not to say that the KCCR has unlimited subpoena powers and can subject an entire facility to demands or whims without some showing of relevancy to the investigation. In the present case the KCCR desires access to the personnel records of over 5,500 employees of the Cessna Pawnee Division without any showing or justification other than the bare statements of counsel that the records might lead to something which would support Ms. Cotter's individual complaints against Cessna. KCCR offered no evidence before the trial court, filed no pleadings and evidently was content to stand by on the theory the KCCR is entitled to anything it wants. In *Lopez* we said:

"Administrative subpoenas which have previously been condemned as 'fishing expeditions' are now permitted, and administrative subpoenas may be enforced for investigative purposes unless they are plainly incompetent or irrelevant to any lawful purpose." Syl. ¶ 7.

While that is the rule, it does not mean the KCCR may throw its line in just anybody's pond without some minimal justification or expectation that there may be some fish in the pond. The limits of the subpoena power of the KCCR are, by statute, subject to the sound discretion of the trial court. *KCCR v. Sedgwick County Mental Health Clinic,* 220 Kan. 653, Syl. ¶ 1, 556 P.2d 180 (1976).

In the instant case the work history of Ms. Cotter was admitted in evidence. She commenced her employment in accounting department 94 at the Cessna Pawnee Division in July, 1973, as an hourly-paid, clerk general at a wage rate of $3.225 per hour. In November, 1973, she transferred to accounting department 92 where she progressed until at the time of trial she was a weekly-salaried supervisor with a base salary of $320.00 per week. The evidence disclosed numerous categories of employees at Cessna. The majority of employees are production workers who are subject to union bargaining contracts which to some extent control wages, advancements, and other items about which Ms. Cotter complains. Accounting personnel are non-union and not subject to the union bargaining agreements. Any possible relevancy the records of these production workers would have to the individual complaints of Ms. Cotter would appear negligible if not non-existent. The testimony disclosed that there are variations in the conditions of employment as to pay, promotions, etc., depending upon whether the particular employee is paid hourly, weekly, or

monthly. The record also discloses differing employment policies depending upon the type of employment such as production, maintenance, customer services, administrative, etc. Ms. Cotter had never worked outside the accounting department where the employees are classified as administrative employees. Even within the administrative classification there appear to be sub-classifications such as technical and non-technical. Ms. Cotter was not called as a witness to support any of her allegations.

Ms. Cotter was classified as a Grade B, non-technical, administrative, weekly-salaried supervisor in accounting department 92. The evidence disclosed that there were approximately 50 employees in the accounting department, twelve of which had comparable classifications to Ms. Cotter with a total of 21 of the same classification throughout the Pawnee Division. When Grade C employees of the same classification are added, the total employees in Ms. Cotter's job classification comes to 60. When these employees' records are added to all the hourly-paid and weekly-salaried employees of both accounting departments, the total involved is approximately 200 who might be considered to be subject to similar employment conditions as Ms. Cotter.

As the KCCR has filed no pleadings or trial briefs and produced no evidence, we are left to the brief in this court and the arguments of counsel at trial to attempt to ascertain the position of the KCCR. Counsel for the KCCR states repeatedly that the investigation is limited to the complaints of Ms. Cotter but, in the same breath, says the complaint is broad enough and notice enough for an investigation of a pattern or practice of discrimination at the Pawnee Division. It seems to be the position of the KCCR that they are investigating the individual complaints of Ms. Cotter which appear to be confined to paragraphs 2, 3 and 4 and the first sentence of paragraph 5, but that in doing so, the KCCR can investigate the entire Pawnee Division based upon the general allegations of the balance of paragraph 5 and paragraphs 6, 7 and 8. The argument is there might appear to be violations in another area of the plant such as the maintenance department and this might be some evidence of a pattern or practice which might have resulted in individual violations directed at Ms. Cotter. It would appear to be an attempt to compare apples and oranges with no showing of the efficacy or relevancy of such a comparison. While we are not saying that the burden is upon the KCCR in

the first instance to justify its subpoena requests, when the same do become an issue before the trial court, some showing of relevancy should be made if a trial court is to have a basis to determine whether the subpoena is unreasonable or oppressive.

The trial court in this case modified or limited the subpoena duces tecum. It found upon the evidence before it that to require Cessna to produce the records of over 5,500 employees, over 5,300 of whom were employed in areas and departments of the facility that Ms. Cotter had never had any connection with and knew nothing about, would be burdensome and oppressive to Cessna. Based upon the record, that finding is supported by the evidence and common sense. The trial court further found the material and relevant records which Cessna must produce were limited to the subpoenaed records of all employees of accounting departments 92 and 94 and the subpoenaed records as they pertained to all weekly-salaried, Grades B and C, non-technical, administrative supervisors throughout the entire Pawnee Division. Such a finding carries with it the inherent finding that the other subpoenaed records were irrelevant to the investigation of the Cotter complaint. The subpoena, as modified, would appear, at least at this stage of the proceedings, to cover all the relevant records of employees subject to the same or similar employment procedures.

In *E.E.O.C. v. Packard Elec. Div., Gen. Motors Corp.,* 569 F.2d 315 (5th Cir. 1978), the United States Court of Appeals considered two consolidated cases in which the individual complaints of three employees of Packard and one employee of General Motors were being investigated. The trial court limited the scope of the investigative subpoena to records of comparable situations, employees and facts. The E.E.O.C. appealed, arguing it was entitled to facility-wide records and statistics. The complaints were being investigated under Title VII of the Equal Employment Opportunity Act, 42 U.S.C. § 2000e *et seq.,* which is similar in many respects to our act. The reasoning and logic of the court in *Packard* is persuasive. The court stated:

"The 'relevance' of documents in an administrative proceeding is a mixed question of law and fact, which implies that our standard of review of such determinations should look either to 'legal error' or to 'clear error,' depending on the circumstances. *See FTC v. Texaco, supra,* [170 U.S. App. D.C. 323, 517 F.2d 137 (1975), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2939, 2940, 53 L.Ed.2d 1072, *reconsidered en banc,* 555 F.2d 862 (D.C. Cir. 1977)] 555 F.2d at 876; *FTC v. Lonning,*

176 U.S. App. D.C. 200, 539 F.2d 202 (1976). But in addition, under Fed. R. Civ. P. 45(b), [identical to K.S.A. 60-245(*b*)], the district court may weigh such equitable criteria as reasonableness and oppressiveness in issuing a subpoena for documents. Determinations under this rubric imply a balancing of hardships and benefits, and the standard by which we review such matters of relative burdensomeness is 'abuse of discretion.'

"In denying enforcement of subpoenas for plant-wide workforce breakouts, the district court based its decision on the criterion of relevance rather than the equitable criterion of burdensomeness, finding that the EEOC had not shown the relevance of the broad breakout data 'at this stage in the investigation.' Since the question of relevance in this instance is essentially a factual determination concerning the interrelation or lack thereof of different groups of facts, we must uphold the district court's determination unless it is clearly erroneous.

"The EEOC maintains that the district court took too narrow a view of relevance in judging the requested statistical information. It points out that statistical information may be used to establish that the treatment of a particular employee follows a general pattern of employer discrimination, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). And as this court has said in a leading case on the subject, *Georgia Power, supra,* [412 F.2d 462 (5th Cir. 1969)], race and sex discrimination is inherently class discrimination, and the EEOC must have comparative data in order to investigate an employment discrimination charge. 412 F.2d at 468.

"All this may be so, but it does not help us in determining precisely what statistical and comparative data are to be deemed 'relevant.' Certainly, at a minimum, those statistical materials must be deemed relevant that are necessary for the EEOC effectively to carry out its statutory investigatory duties, and a district court may not construe relevance so restrictively as to disable the Commission in carrying out those duties. *New Orleans Public Service, Inc., supra,* [507 F.2d 160 (5th Cir. 1975)] at 165; *Local 104, Sheet Metal Workers International Association v. EEOC,* 439 F.2d 237, 242 (9th Cir. 1971); *see also United States v. Bisceglia,* 420 U.S. 141, 151, 95 S.Ct. 915, 43 L.Ed.2d 88 (1965). Moreover, we must look to the particular purpose of the investigation in question. *United States v. Humble Oil & Refining Co.,* 518 F.2d 747 (5th Cir. 1975). *In the context of an investigation of an individual complaint, it might well be most natural to focus on that employing unit or work unit from which came the decision of which the individual complainant complains; within such a unit the EEOC might well need a wide spectrum of statistical data in order to illuminate the general policies bearing on the complainant's situation. See Joslin Dry Goods v. EEOC,* 483 F.2d 178, 184 (10th Cir. 1973); see also *Parliament House, supra* [444 F.2d 1335 (5th Cir. 1971)], at 1340. *But in the absence of some showing by the EEOC to the contrary, it is not immediately evident that this unit need be or is in this case the entire facility or that an entire facility-wide workforce breakout bears on the subject matter of these individual complaints.* We therefore cannot deem clearly erroneous the district court's finding that the plant-wide workforce breakouts sought were not shown to be relevant at the then current stage of the investigation. The district court's order requires the defendants to disclose data along lines similar to those laid down in *Georgia Power, supra.*" pp. 317-18. (Emphasis added.)

We find no abuse of discretion by the trial court in its modification of the subpoena duces tecum.

While the foregoing disposes, for all practical purposes, of the issues in this case, we deem it necessary to address briefly additional points in controversy.

In addition to limiting the scope of the subpoena, the trial court also enjoined the KCCR from investigating the general complaints of Ms. Cotter to the emphasized allegations of paragraph 5 of the complaint as hereinbefore set forth. The trial court's order reads:

"2. That The Kansas Commission on Civil Rights should be and it is hereby temporarily and permanently enjoined from conducting any investigation of the plaintiff or of any witnesses or documents, based upon the verified complaint of Nancy Cotter (plaintiff's trial Exhibit 2), other than an investigation pertaining to and limited to: (1) hourly-paid and weekly-salaried employees of accounting departments 92 and 94 at the Pawnee Division; (2) weekly-salaried, Grades B and C, non-technical, administrative supervisors at the Pawnee Division; (3) Nancy Cotter's individual complaints; and (4) to the specific allegations of a pattern of practice of discrimination as set forth in the portion of her verified complaint which is quoted in paragraph 3 of the court's findings, above."

Item (4) in the court's order refers to the same portion of the complaint as that emphasized in paragraph 5. of the quoted complaint. The trial court ruled that the KCCR could conduct a pattern of practice of discrimination investigation within the parameters of the previously emphasized portions of paragraph 5 of the complaint and as limited by the modified subpoena.

K.S.A. 1979 Supp. 44-1005 provides several methods of instituting investigations of discriminatory acts or practices. The first paragraph of the statute provides that an individual employee may file a complaint but it must set forth the *particulars* of the alleged unlawful practices.

Paragraph 2 of the statute authorizes the KCCR or the attorney general to file *such a complaint,* apparently meaning a complaint for an individual. The paragraph also authorizes the attorney general to file a complaint when he *"has sufficient reason to believe that any person as herein defined is engaged in a practice of discrimination . . . ."*

Paragraph 3 authorizes the KCCR to conduct an investigation without the necessity of a complaint being filed if it has *"reason to believe that any person as herein defined has engaged in an unlawful employment practice or an unlawful discriminatory*

*practice in violation of this act, or has engaged in a pattern or practice of discrimination."* The statute requires that the person being investigated be given notice of the nature and scope of the investigation.

Thus, it may logically be argued that an individual may file only an individual complaint under paragraph 1; that the KCCR or the attorney general may file an individual complaint and the attorney general may file *a practice of discrimination complaint* under paragraph 2; and under paragraph 3, the KCCR may conduct an investigation without a complaint being filed of either individual unlawful employment and discriminatory practices or a pattern or practice of discrimination. In any event, the statutes themselves, and due process, require notice with particularity of the alleged unlawful practices and the employer must be advised of the nature and scope of any proposed investigation. Considering the general nature of the allegations of Ms. Cotter's complaint, in light of the record in this case, the district court did not commit error in limiting the scope of the investigation and in issuing the injunction. Cessna would have us go further and determine that the allegations of the complaint are totally inadequate to give it notice of any complaints with the exception of those set forth in paragraphs 2, 3, 4 and the first sentence of paragraph 5, and in addition, would have us rule that a pattern of practice investigation may not be conducted on the basis of an individual complaint. While the arguments of Cessna may have considerable merit, Cessna did not cross-appeal from the order granting a partial injunction and, therefore, we do not deem the issues to be properly before us and we decline to consider them at this time.

We are fully cognizant of the purposes of the Kansas Acts Against Discrimination and the need for a liberal construction of its provisions as called for in 1979 Supp. 44-1006. However, the act itself, and due process, place limitations upon the powers of the KCCR and it cannot exercise unbridled power based purely upon whim or speculation. Additionally, we question the logic of attempting to obtain facility-wide access to the records of several thousand employees upon the unsubstantiated allegations of one disgruntled employee. If a proper investigation within the guidelines set forth by the district court reveals relevant evidence of broad violations of the act against others than Ms. Cotter, upon

proper application by the KCCR, the district court may broaden the scope of the subpoena powers of the KCCR and modify the injunction. Such is not justified by the record before this court at this time.

The judgment is affirmed.

PRAGER, J., dissenting.

I respectfully dissent. In my judgment, the majority opinion has placed serious restrictions on the Kansas Commission on Civil Rights (KCCR) which will hamper the performance of its statutory duty to conduct investigations for the purpose of determining violations of the Kansas Acts Against Discrimination (K.S.A. 44-1001 *et seq.*). It is the public policy of the State of Kansas to eliminate and prevent discrimination in all employment relations. To carry out that public policy, K.S.A. 1979 Supp. 44-1004(5) empowers the KCCR to subpoena witnesses, compel their attendance, require the production for examination of records, documents and other evidence or *possible sources of evidence,* and it may issue subpoenas to compel access to or the production of such material. Under K.S.A. 1979 Supp. 44-1005, the KCCR is granted broad powers of investigation where a verified complaint is filed, and it is given the same broad powers of investigation even though a formal complaint is not filed. In *Atchison, T. & S.F. Rly. Co. v. Lopez,* 216 Kan. 108, 531 P.2d 455 (1975), this court held that the law refuses to apply the stringent relevancy requirements of subpoenas in aid of civil or criminal litigation to administrative agency subpoenas. To uphold a subpoena on the ground of relevancy, the law requires only (1) that the inquiry be one which the administrative agency demanding production is authorized to make, (2) that the demand be not too indefinite, and (3) that the information sought be reasonably relevant.

I agree with the basic principles of law discussed in the majority opinion but not to their application to the facts in the case. The district courts of this state have the authority to restrict or modify subpoenas issued by the KCCR, where there is a substantial showing that the subpoena is unreasonable or oppressive. Under the guidelines established in *Kansas Commission on Civil Rights v. Carlton,* 216 Kan. 735, 533 P.2d 1335 (1975), and *Lopez,* it appears to me that the information sought by

subpoena in this case is relevant and within the scope of an investigation which the KCCR is authorized to make. There is nothing in the record to show that making available for inspection the personnel records described in the subpoena would be oppressive or work an unreasonable hardship on Cessna. All of the records are in the personnel office of the Pawnee Division of Cessna and Cessna did not introduce any evidence showing that compliance with the subpoena would work any unreasonable hardship on the company. The verified complaint of Nancy Cotter, which was the basis for the investigation, alleges that there is a pattern of discrimination by Cessna against women in areas of pay, promotion, benefits, and in job classification and assignment. How can it reasonably be contended that the personnel records in the Pawnee Division are not relevant to the issue of discrimination in the areas mentioned in the complaint? It appears to me that the majority have departed from the rule of liberal construction to be applied in interpreting the act and are now taking a position of strict interpretation which will seriously impair the enforcement of the act by the KCCR. I, therefore, respectfully dissent.

HERD, J., joins in the foregoing dissenting opinion.