(626 P.2d 332)

No. 51,404

KANSAS COMMISSION ON CIVIL RIGHTS, *Appellant,* v. CHANCE MANUFACTURING COMPANY, INC., and RICHARD G. CHANCE, PRESIDENT, *Appellees.*

Opinion filed April 24, 1981.

*Nelsonna Potts Barnes,* of Wichita, for appellant.

*H. E. Jones,* of Hershberger, Patterson, Jones & Roth, of Wichita, for appellees.

Before JUSTICE HOLMES, presiding, MEYER, J., and HARRY G. MILLER, District Judge Retired, assigned.

HOLMES, J.: This is another in a long line of cases involving the subpoena power of the Kansas Commission on Civil Rights (KCCR). The KCCR appeals from an order of the district court which in effect quashed a subpoena duces tecum issued to Chance Manufacturing Company, Inc. (Chance), and its president, Richard G. Chance. The action was originally filed by the KCCR to enforce a subpoena duces tecum issued by the KCCR in connection with a civil rights complaint filed by a former employee of Chance.

On March 12, 1979, Roy Lee Jamerson filed a complaint with the KCCR alleging that he had been discriminated against by Chance in violation of the Kansas act against discrimination. (K.S.A. 44-1001 *et seq.,* as amended and supplemented.) Jamerson's complaint alleged:

"I am a Black American. I was employed by the Chance Manufacturing Company for two and one-half (2-½) months as a welder.

"During my employment, I was harassed by my Supervisor, Glen Stevie, and by

my co-workers. Such as, when I was welding, my co-workers would come by and turn up my machine which would burn a hole in the material and then it would be blamed on me. After working there for thirty (30) days, I was supposed to receive a raise but Mr. Stevie told me that I did not deserve a raise.

"On March 2, 1979, I was informed by Mr. Stevie that I was not good enough to weld for him and I was terminated. To my knowledge, had I been of the Caucasian race, I would not have been treated in this manner.

"I feel that the reason for this disparaging and humiliating treatment is because of my race.

"I hereby charge the Chance Manufacturing Company, and its representatives with a violation of the Kansas Act Against Discrimination in that they discriminated against me in the terms, conditions, and privileges of my employment by subjecting me to undue harassment and unjustly terminated me because I am a Black American."

On April 24, 1979, representatives of the KCCR conducted an initial interview with the complainant. The results or substance of that interview is not part of the record on appeal. On April 26, 1979, representatives of the KCCR conducted an initial interview with officials of Chance *and at the same time served upon Chance a records request seeking access to the personnel files of other employees.* It appears that at this interview the complete personnel file of Mr. Jamerson was made available by Chance. The file revealed that Jamerson had been advised that his work was unsatisfactory prior to his discharge. Photographs of Jamerson's work as a welder were produced and the extreme necessity for a high standard of ability and workmanship was explained to the KCCR representatives. Following this disclosure Chance refused the records request which sought access to the files of other welders employed by Chance. On May 22, 1979, the KCCR issued its subpoena duces tecum to Chance in which it sought:

"1. All records necessary to ascertain the sex, race, job title, date of hire, rate of pay, date of termination, and the reason for termination, of all employees employed in the Complainant's department from November 1, 1978 through March 31, 1979.

"2. The personnel files of all welding employees at Chance Manufacturing from November 1, 1978, through March 31, 1979."

On May 25, 1979, Chance responded to this subpoena by written communication in which it pointed out the information previously furnished, the inadequacy of Jamerson's work and that Jamerson had been discharged solely because of his inability to perform the duties of his employment in a satisfactory manner.

As a result, Chance refused to respond further to the subpoena or to make the requested records available.

On June 14, 1979, the KCCR filed this action to enforce the subpoena previously issued and secured an ex parte order directing Chance to comply with the terms of the subpoena. Chance filed a motion to vacate the order and on July 6, 1979, after a hearing, the court sustained the motion of Chance. The order of the court stated, in part:

"THEREUPON, said matter is presented to the Court. The Court, being duly advised in the premises, finds that the Commission is not entitled to the records described in the Subpoena Duces Tecum on the grounds that the records requested are not relevant.

"The Court further finds that the Motion to Vacate the Ex Parte Order and the issuance of the Subpoena Duces Tecum be sustained until such time as the Kansas Commission on Civil Rights can substantiate that an examination of those records requested would indicate that the respondents herein and movants had no reasonable business motives for discharge of the said Roy Lee Jamerson, the subject of the complaint.

"IT IS SO ORDERED."

The KCCR has appealed.

At the outset appellees have raised the question of the jurisdiction of this court to entertain the appeal. They argue this court lacks jurisdiction under two theories: (1) that appellant has acquiesced in the trial order; and (2) the trial court's order is not a final decision.

After the trial court vacated the ex parte order the KCCR proceeded with interviews of employees of Chance and appellee contends the purpose of the interviews was to gather evidence to meet the trial court's prerequisite to the enforcement of the subpoena duces tecum. Appellees contend this is an acquiescence in the order and precludes an appeal. See *Brown v. Combined Ins. Co. of America,* 226 Kan. 223, Syl. ¶ 6, 597 P.2d 1080 (1979); *Barnes v. Carroll,* 207 Kan. 545, 485 P.2d 1293 (1971). The KCCR contends that it was merely proceeding in its usual fashion to continue the investigation while the results of the appeal as to the subpoena were pending. The power to conduct an investigation and interview witnesses is clearly authorized by K.S.A. 1980 Supp. 44-1004 and we do not construe the exercise of that power under the facts of this case to constitute an acquiescence in the court's order.

Next, the appellees contend that the court lacks jurisdiction of the appeal because the order of the trial court is conditional and

not final. K.S.A. 60-2102(*a*)(4). While the court order reads as if it were not final, this action was filed to enforce the subpoena as issued and the practical result of the decision is to deny that request. For all practical purposes, the order is final and we find we have jurisdiction to entertain the appeal. *Kansas Commission on Civil Rights v. Sears, Roebuck & Co.*, 216 Kan. 306, 532 P.2d 1263 (1975).

We now turn to the merits of the appeal. The KCCR asserts the trial court committed error when it determined that upon the showing before it, the records requested were not relevant to the complaint and investigation based thereon. The Kansas Supreme Court recently had occasion to review the subpoena powers of the KCCR in *Cessna Aircraft Co. v. Kansas Comm'n on Civil Rights*, 229 Kan. 15, 622 P.2d 124 (1981), and we see no reason to repeat at length what was said in that opinion.

In *Cessna* the court held:

"When the scope of a subpoena is called into question before the trial court, some showing of relevancy must be made if the trial court is to have a basis upon which to determine whether the subpoena is unreasonable or oppressive." Syl. ¶ 6.

In the present case we have not been furnished any transcript of the hearing or proceeding in the district court. The entire record on appeal consists of thirty-two pages of pleadings, affidavits, letters, etc., filed with the district court. Counsel for the KCCR admitted at oral argument that no evidence or testimony was presented to substantiate the complaint of Mr. Jamerson or the relevancy of the records requested. As a part of the record is an affidavit executed by the supervisor of the Wichita branch office of the Kansas Commission on Civil Rights in which she states in part:

"3. That according to Commission procedure, the normal processing of a complaint is as follows:
  (a) Investigator conducts initial interview with Complainant.
  (b) Investigator conducts initial interview with Respondent *at which time Respondent is given a request for records.* The relevancy of the records request is explained to Respondent." (Emphasis added.)

It therefore appears that it is the usual procedure of the KCCR to determine solely from the filed complaint and interview with the complainant what records it deems relevant and to demand the production thereof before ever considering the position of the

respondent employer or considering evidence presented by the employer to support that position. Failure to comply with the records demand is followed by a subpoena duces tecum and if the employer fails to respond, court action follows to enforce the subpoena. The KCCR then seeks court enforcement without the presentation of any evidence as to the relevancy of the documents sought. In the instant case, the record reflects that the KCCR had been given full access to Jamerson's file and been fully advised of the basis for his termination. The KCCR chose not to rebut any of the statements set forth by Chance and insists upon the absolute enforcement of the subpoena.

The subpoena power of the KCCR is subject to K.S.A. 60-245(*b*) and cannot be unreasonable or oppressive. *Cessna Aircraft Co. v. Kansas Comm'n on Civil Rights,* 229 Kan. 15 at 27; *Yellow Freight System, Inc. v. Kansas Commission on Civil Rights,* 214 Kan. 120, 125, 519 P.2d 1092 (1974).

"The determination of the scope of a subpoena issued by the Kansas Commission on Civil Rights is subject to the sound discretion of the trial court." *Cessna Aircraft Co. v. Kansas Comm'n on Civil Rights,* 229 Kan. 15, Syl. ¶ 5.

Based upon the record before us we cannot say the trial court abused its discretion.

The judgment is affirmed.