(722 P.2d 585)

No. 58,456

STATE OF KANSAS, *ex rel.* LARRY E. WOLGAST, Secretary of Human Resources, *Appellee*, v. RICHARD L. SCHURLE, d/b/a SCHURLE SIGN SERVICE, *Appellant*.

Opinion filed July 24, 1986.

*Richard L. Schurle*, appellant pro se.

*H. Dean Cotton*, office of chief counsel, Department of Human Resources, for appellee.

Before BRISCOE, P.J.; RICHARD W. WAHL, District Judge, assigned, and CORWIN C. SPENCER, J. Retired, assigned.

WAHL, J.: This case arises in conjunction with an investigation into whether liability exists for unemployment taxes. In an action by appellee Secretary of Human Resources for an order to enforce a subpoena duces tecum issued upon appellant Richard

L. Schurle, d/b/a Schurle Sign Service, appellant appeals an order overruling his motion to quash.

Richard L. Schurle operates a sign business in Riley, Kansas. He first became an employer for purposes of paying unemployment taxes under the Employment Security Law, K.S.A. 44-701 *et seq.*, on January 1, 1978, by employing one or more people during twenty different calendar weeks. Schurle filed the required quarterly reports and paid the appropriate taxes through the first quarter of 1982. Thereafter, he filed wage reports showing no payment of wages for eight consecutive quarters. The Department of Human Resources marked Schurle's file "inactive" on March 31, 1984.

On October 19, 1984, Schurle again began paying wages and filed an appropriate report. Thereafter, the Department of Human Resources, Division of Employment, assigned a field representative, Herbert L. Huerter, to "investigate for liability" for employment taxes due from Schurle's sign business.

The investigator testified that he had no evidence to believe Schurle had paid wages to employees from April 1982 through October 1984, but he suspected an unemployment tax violation during that period because he had seen Schurle's truck around town twice. Schurle admitted continuous operation of his business but contended he had employed no one. On December 11, 1984, Huerter caused a subpoena to issue from the Human Resources Department upon Schurle commanding him to produce "check stubs from all checking accounts, check register, general ledger, disbursements journal, Federal Forms 940, 941 and 1099, time and payroll records and all other records of expenditures by or for the business entity indicated above, so that the status of workers and the wages paid from January 1, 1982, to the current date can be verified."

Schurle refused to obey the command of the subpoena.

On January 29, 1985, the Secretary of Human Resources filed this action in the district court seeking an order enforcing the subpoena. The court issued the requested order on February 4, 1985. Two days later, with aid of counsel, Schurle filed a motion to quash the subpoena contending, among other things, that the Department lacked jurisdiction for failure to show that he was an "employer," and that the Department lacked authority under case law to embark on a "fishing expedition."

The case was heard on March 21, 1985. On July 2, 1985, the

court issued an order overruling Schurle's motion to quash. The court found that Schurle had remained an employing unit subject to Department supervision because he had never requested termination of his status as an "employer." The court also found that fishing expeditions are a legitimate administrative investigatory tool and that the subpoena here was authorized, definite, and reasonably relevant to the Department's inquiry. Schurle filed a pro se notice of appeal.

On appeal, Schurle argues that because the Secretary has not shown him to be an employer subject to the Employment Security Law, K.S.A. 44-701 *et seq.*, the Secretary has no authority to issue a subpoena upon him. We disagree.

The Kansas Employment Security Law is an act complete within itself, providing its own procedure. *City of Hutchinson v. Hutchinson, Office of State Employment Service*, 213 Kan. 399, 517 P.2d 117 (1973). In recognition of the legislative determination that economic insecurity due to unemployment is a "serious menace to [the] health, morals, and welfare of the people of this state," it is the Act's policy that the compulsory setting aside of unemployment reserves for the benefit of persons unemployed be accomplished under the police powers of the State. K.S.A. 44-702.

The Act requires all employers to pay contributions to the employment security fund at a rate established by the Secretary. K.S.A. 1985 Supp. 44-710(a). "Employer" is broadly defined, but in pertinent part is:

"Any employing unit which . . . (ii) for some portion of a day in each of 20 different calendar weeks . . . had in employment at least one individual . . . ." K.S.A. 1985 Supp. 44-703(h)(2)(A).

Once an "employing unit" becomes an "employer," it will continue to be an employer under K.S.A. 1985 Supp. 44-703(h)(6), which defines employer as:

"Any employing unit which having become an employer under this subsection (h) has not, under subsection (b) of K.S.A. 44-711 and amendments thereto, ceased to be an employer subject to this act."

The Secretary of Human Resources is granted the authority and duty to administer the Act, K.S.A. 1985 Supp. 44-714(a); K.S.A. 1985 Supp. 44-703(e), and to that end the Secretary is accorded the power and authority "to adopt, amend, or revoke such rules and regulations . . . require such reports, *make such*

*investigations,* and take such other action as [he] deems necessary or suitable." (Emphasis added.) K.S.A. 1985 Supp. 44-714(a). In the discharge of the duties imposed by the Employment Security Law, the Secretary, or any duly authorized representative, has explicit power "to administer oaths and affirmations, take depositions, certify to official acts, and *issue subpoenas to compel the attendance of witnesses and the production of books, papers, correspondence, memoranda and other records* deemed necessary as evidence in connection with . . . the administration of the employment security law." (Emphasis added.) K.S.A. 1985 Supp. 44-714(g). The Act further bestows jurisdiction upon any court of this state to hear an application of the Secretary for enforcement of any subpoena which has been disobeyed. K.S.A. 1985 Supp. 44-714(i).

In this case, Schurle argues that the Secretary's subpoena power does not extend to him because he is not an "employer" or "employing unit." Contrary to Schurle's argument, nothing in the statute that grants the Secretary subpoena and other broad, investigatory powers limits the use of those powers to investigations of "employers" or "employing units." K.S.A. 1985 Supp. 44-714(g) simply provides that in the discharge of the duties imposed by the employment security law, the Secretary has certain powers to require the production of those records "deemed necessary as evidence in connection with . . . the administration of the employment security law." Furthermore, it would seem evident that the effort to collect unemployment taxes would be seriously hampered if the Secretary could not investigate an individual or entity to see if he or it was an employing unit or an employer. *United States v. Powell,* 379 U.S. 48, 57, 13 L. Ed. 2d 112, 85 S. Ct. 248 (1964), quoting from *United States v. Morton Salt Co.,* 338 U.S. 632, 642-43, 94 L. Ed. 2d 401, 70 S. Ct. 357 (1950), holds that, in matters relevant to purposes for which the agency is authorized, the agency may investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."

Even if the Employment Security Law could be read to limit the Secretary to investigations of "employers" and "employing units," Schurle never stopped being an "employer" for purposes of the law. Although on inactive status for the Department's record-keeping purposes, Schurle remained an employer be-

cause he never made a written application for termination of coverage under K.S.A. 1985 Supp. 44-711(b). The trial court was correct in concluding that the Secretary was not required to make a preliminary showing that Schurle was an employer in order to exercise subpoena power.

Schurle argues the trial court erred in refusing to quash the subpoena because the Secretary had no reasonable basis for issuing it and was merely embarking on a fishing expedition. While no Kansas cases discuss the Secretary's subpoena power under the Employment Security Law, a well-developed line of cases exists with reference to the subpoena power of the Kansas Commission on Civil Rights, and we find the holdings of those cases persuasive in the issue here before the court under the Employment Security Law.

Kansas has rejected the argument that the stringent relevancy requirements of subpoenas in aid of civil or criminal litigation should apply to administrative agency subpoenas. *Yellow Freight System, Inc., v. Kansas Commission on Civil Rights*, 214 Kan. 120, 125, 519 P.2d 1092 (1974). Rather, in light of agencies' investigatory duties, the test of relevancy requires satisfaction of only three elements: (1) that the inquiry be one which the agency demanding production is authorized to make; (2) that the demand not be too indefinite; and (3) that the information sought be reasonably relevant. *Yellow Freight System, Inc., v. Kansas Commission on Civil Rights*, 214 Kan. at 125. See also *Cessna Aircraft Co. v. Kansas Comm'n on Civil Rights*, 229 Kan. 15, 622 P.2d 124 (1981); *KCCR v. Sedgwick County Mental Health Clinic*, 220 Kan. 653, 556 P.2d 180 (1976); *Kansas Commission on Civil Rights v. Carlton*, 216 Kan. 735, 741, 533 P.2d 1335 (1975); *Kansas Commission on Civil Rights v. Sears, Roebuck & Co.*, 216 Kan. 306, 532 P.2d 1263 (1975); *Atchison, T. & S. F. Rly. Co. v. Lopez*, 216 Kan. 108, 531 P.2d 455 (1975); *Kansas Comm'n on Civil Rights v. Chance Mfg. Co.*, 6 Kan. App. 2d 61, 626 P.2d 332, *rev. denied* 229 Kan. 670 (1981). Moreover, where there is a possibility of relevancy in documents subpoenaed and there is no showing that the subpoena is unreasonable or oppressive (see K.S.A. 60-245[b]), the statute granting the power to subpoena should be liberally construed to permit inquiry. *E.g., Kansas Commission on Civil Rights v. Carlton*, 216 Kan. at 741.

The trial court in this case had the same discretion as trial

courts in the civil rights cases (1) to modify a subpoena by removing objectionable features while preserving the remainder; (2) to quash an otherwise reasonable subpoena if the delay in seeking to enforce it prejudices the rights of the person subject to the subpoena; (3) to weigh such equitable criteria as reasonableness and oppressiveness; and (4) to require some showing of relevancy as a basis upon which to determine whether the subpoena is unreasonable or oppressive once the scope of the administrative subpoena is called into question.

This leaves for determination whether the trial court abused its discretion by clearly acting in a manner so far from law and reason that no reasonable man could agree with it. *Cheek v. Hird*, 9 Kan. App. 2d 248, 250, 675 P.2d 935 (1984). Schurle has neither alleged nor shown that requiring him to produce the records under subpoena is unreasonable or oppressive. As a Kansas employer, he is required to maintain and have open for the Secretary's inspection many of those same records. K.S.A. 1985 Supp. 44-714(f); K.A.R. 50-2-5. The inquiry is within the Secretary's authority to investigate; it is not indefinite, and appears reasonably relevant to the question whether Schurle paid wages to employees during the time period in question. While the Secretary cannot subject Schurle and his records to the subpoena without some minimal justification (*Cessna Aircraft Co. v. Kansas Comm'n on Civil Rights*, 229 Kan. at 28), the trial court found such minimal justification in the field representative's sighting of Schurle's trucks working around town and in Schurle's beginning to pay wages again after a period of not paying wages. The trial court did not abuse its discretion in overruling Schurle's motion to quash.

Affirmed.